**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Ra O. Amen (*Pro Hac Vice*)
Ramen@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

Gretchen M. Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
NELSON & FRAENKEL LLP
601 S. Figueroa Street., Suite 2050
Los Angeles, California, 90017
Telephone:  (213) 622-6469
Facsimile: (213) 622-6019

*Attorneys for Plaintiff and the Proposed Classes*

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DEL OBISPO YOUTH BASEBALL, INC. d/b/a DANA POINT YOUTH BASEBALL, individually and on behalf of all other similarly situated individuals and entities, | Case No.: 8:21-cv-00199- JVS-DFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs,

v.

THE AMBASSADOR GROUP LLC
d/b/a AMBASSADOR CAPTIVE
SOLUTIONS; PERFORMANCE
INSURANCE COMPANY SPC;
BRANDON WHITE; GOLDENSTAR
SPECIALTY INSURANCE, LLC;
DOMINIC CYRIL GAGLIARDI; and
DOES 1 through 50,

Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Del Obispo Youth Baseball, Inc. d/b/a Dana Point Youth Baseball ("DPYB"), brings this Class Action Complaint individually and on behalf of all other similarly situated individuals and entities against The Ambassador Group LLC d/b/a Ambassador Captive Solutions ("Ambassador"); Performance Insurance Company SPC ("Performance"); Brandon White ("White"); Goldenstar Specialty Insurance, LLC ("Goldenstar Specialty"); Dominic Cyril Gagliardi ("Mr. Gagliardi"); and Does 1 through 50 (collectively, the "Defendants") and hereby states as follows:

## NATURE OF ACTION

1.      Plaintiff asserts this class action individually and on behalf of all other similarly situated individuals and entities against Defendants for their involvement in a scheme to defraud Plaintiff and class members by selling counterfeited and nonexistent insurance policies, which purport to provide general commercial, accident, directors' and officers', auto and other types of insurance to Plaintiff and class members, which primarily include youth sports teams, leagues, and athletes throughout the United States.

2.      This class action seeks damages and equitable relief under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and various state and common law claims.

## JURISDICTION AND VENUE

3.      This Court has federal subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and § 1332(a) as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs, as well as pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendants.

4.      This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case and controversy and derive from a common nucleus of operative facts.

5.      Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendants conduct their affairs in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

6.      This Court has personal jurisdiction over Defendants as they have purposefully availed themselves of the forum, have transacted business regularly in the forum, and because the exercise of jurisdiction in this forum over Defendants would not offend traditional notions of fair play and substantial justice.

## PARTIES

7.      Plaintiff DPYB is a California company with a principal place of business at 32565B Golden Lantern St. #351, Dana Point, California 92629.

8.      Defendant Ambassador is a Kentucky limited liability company with a principal place of business at 9700 Park Plaza Avenue, Unit 201, Louisville, Kentucky 40241, and registered to do business in California.

9.      Upon information and belief, Defendant Performance Insurance Company

SPC is a segregated portfolio company based in the Cayman Islands which maintains an office in the United States at 9700 Park Plaza Avenue, Unit 201, Louisville, Kentucky 40241. Upon information and belief, Goldenstar Holdings Company SP ("Goldenstar Holdings") is a segregated portfolio of Performance Insurance Company SPC based in the Cayman Islands.

10.     Upon information and belief, Defendant Brandon White is a Kentucky resident.

11.     Upon information and belief, Defendant Goldenstar Specialty Insurance, LLC (formerly known as Goldenstar Underwriting Company, LLC) is a Pennsylvania limited liability company with a principal place of business at 1315 Walnut Street, Suite 1101, Philadelphia, Pennsylvania 19107.

12.     Upon information and belief, Defendant Dominic Cyril Gagliardi is a California resident.

## BACKGROUND FACTS

### Plaintiff Dana Point Youth Baseball

13.     DPYB is a nonprofit organization that has provided the means for community youth in South Orange County to develop qualities and attributes through baseball since 1968.  DPYB boundaries include the cities of Dana Point, San Juan Capistrano, San Clemente, Laguna Niguel and Laguna Beach but welcomes players from all cities.

14.     DPYB is a member of the larger PONY Baseball, Inc. nonprofit organization ("PONY National").

15.     PONY National, which stands for Protect Our Nation's Youth, was formed in 1951 and consisted of only six teams when founded.  Currently, more than 500,000 players (stretching across over 4,000 leagues throughout the United States and over 40 countries world-wide) participate in the PONY organization annually.

16.     Membership in PONY National is open to children and young adults from ages 4 to 23.

### The Scheme to Defraud Plaintiff and Class Members

17.     Defendants are part of a nationwide, association-in-fact enterprise that has existed and operated for at least the last ten years. The purpose and actions of the enterprise was the misappropriation and/or theft of premium dollars from youth sports teams, leagues, and athletes throughout the United States by selling counterfeited and nonexistent "insurance policies" (the "Counterfeited Policies"), which purport to provide accident, health, and other insurance primarily to these youth sports teams, leagues, and athletes (the "Scheme").  The "Counterfeited Policies" include all counterfeited and nonexistent "insurance policies" sold to Plaintiff and class members.

18.     The Scheme involved supposed accident and health insurance policies that purport to insure hundreds (and maybe thousands) of sports teams and leagues throughout the United States, and an exponentially larger number of individual athletes.  Some of the Counterfeited Policies are for combat sports and football and have million-dollar limits for certain brain injuries.

19.     The Scheme also involved Gagliardi Insurance Services, Inc. ("Gagliardi Insurance"), which served as the insurance broker in the Scheme selling the Counterfeited Policies to Plaintiff and class members.

20.     Gagliardi Insurance is a Pennsylvania corporation with a principal place of business at 1010 N. Hancock Street, Philadelphia, Pennsylvania 19123.

21.     Mr. Gagliardi is the President of Gagliardi Insurance.

22.     Upon information and belief, Mr. Gagliardi controls Gagliardi Insurance and directly or indirectly effectuated all its actions related to the Scheme.

23.     Upon information and belief, each Defendant was aware of, participated in, planned, or encouraged each act committed for the Scheme's effectuation.

24.     Plaintiff and class members did not discover that they were defrauded until after substantial premium payments had been made.

25.     Plaintiff approximates that it paid more than $64,000 to Gagliardi Insurance over the course of ten years for non-existent and forged "insurance coverage."  Plaintiff's

most recent premium payment to Gagliardi Insurance was approximately $8,000.

26.     Upon information and belief, class members have paid considerable premiums for the Counterfeited Policies to Gagliardi Insurance.

27.     Upon information and belief, all Defendants have shared in the revenue and profits produced by the Scheme.

**The Relationship between Defendants: Captive Reinsurance**

28.     The fraud alleged in this Complaint relates to an area of insurance known as "captive reinsurance."  Captive reinsurance programs are complex multi-party arrangements that require specialized expertise and significant underwriting capacity.

29.     In short, in a captive reinsurance relationship, a broker (who is not licensed to issue insurance policies) uses several intermediaries to form an indirect relationship with an insurance company (an "Issuing Carrier").  This relationship allows the broker to indirectly issue policies to its customers, act as its own "insurance company," assume part of the risks, and retain additional profits.

30.     In the type of captive reinsurance program here at issue, an insurance broker or other company (the "Broker/Owner") forms and owns a captive reinsurance company (the "Captive").  The Captive is ultimately responsible for paying some or all of the losses on policies sold by the Broker/Owner.

31.     A Captive can also be referred to as a reinsurer.[1]

32.     Because Captives are not licensed direct insurers, the Broker/Owner seeks to engage an Issuing Carrier to issue the insurance policies to be resold by the Captive.  The apportionment of risk between the Issuing Carrier and the Captive is typically documented in a reinsurance agreement through which the Captive (as the reinsurer) agrees to reimburse the Issuing Carrier for some or all of the losses incurred under the policies.

33.     Typically, the Captive pays the Issuing Carrier a fee or commission payment

---

[1] https://www.captive.com/articles/how-do-captive-insurers-use-reinsurance.

FIRST AMENDED CLASS
ACTION COMPLAINT
6
Case No.: 21-cv-00199- JVS-DFM

for acting as the Issuing Carrier.  In addition, the Captive provides collateral to the Issuing Carrier to secure, among other things, the Captive's obligation to reimburse the Issuing Carrier for any reinsured losses that the Issuing Carrier incurs.

34.     Typically, the Captive issues or is responsible for issuing the individual insurance policies to its customers.

35.     Typically, the Captive processes or is responsible for processing the individual insurance claims of its customers.

36.     These complex captive reinsurance transactions are often facilitated by a "captive intermediary," an entity that assists a Broker/Owner in (1) developing an actuarial model and business plan, (2) forming the Captive, and—most importantly—(3) identifying an Issuing Carrier to issue the policies to be sold by the Broker/Owner and reinsured to the Captive.  Ambassador is such a captive intermediary, founded by Brandon White in 2011 in Louisville, Kentucky.

37.     Upon information and belief, White directly or indirectly owns at least part of Ambassador.

38.     Upon information and belief, during all relevant times of the Scheme's effectuation, White controlled Ambassador.

39.     Upon information and belief, Ambassador and/or White created Goldenstar Holdings Company SP, a cell of Performance, which serves as the Captive for the Scheme.

40.     During all relevant times of the Scheme's effectuation, White served as the Director of Performance.  (*See* Ex. 1 (September 14, 2020 Performance SPC Letter to Partners and Agents), at 2; Ex. 2 (March 17, 2021 Petition for Leave), at 3.)

41.     Upon information and belief, during all relevant times of the Scheme's effectuation, White controlled Performance.  (*See* Ex. 1 (September 14, 2020 Performance SPC Letter to Partners and Agents), at 2; Ex. 2 (March 17, 2021 Petition for Leave), at 3.)

42.     Upon information and belief, during all relevant times of the Scheme's

effectuation, White directly or indirectly owned at least part of Performance. (*See* Ex. 1 (September 14, 2020 Performance SPC Letter to Partners and Agents), at 2.)

43.　Upon information and belief, during all relevant times of the Scheme's effectuation, Ambassador was the "insurance manager of Performance, was contracted to be and served as Performance's and Goldenstar Holding's "captive consultant," and advised Performance and Goldenstar Holding as to their captive reinsurance program, including the Scheme.  (*See* Ex. 1 (September 14, 2020 Performance SPC Letter to Partners and Agents), at 2; Ex. 2 (March 17, 2021 Petition for Leave and Court Supervision), at 3; Ex. 3 (Motion for Order Granting Recognition of Foreign Main Proceeding), at para. 14.)

44.　Defendants sold insurance policies under supposed captive reinsurance programs to Plaintiff and class members.  However, no Issuing Carrier was engaged by Defendants with respect to the Counterfeited Policies sold to Plaintiff and class members and no actual insurance policies were issued by any Issuing Carrier for the Counterfeited Policies sold to Plaintiff and class members.  Instead, Defendants forged documents that misled Plaintiff and class members into believing that Issuing Carriers had issued actual policies in connection with the Counterfeited Policies sold to Plaintiff and class members.

45.　Upon information and belief, Performance, Ambassador, and White forged or caused the forgery of the Counterfeited Policies, which led Plaintiff and class members into believing that Issuing Carriers had issued policies in connection with the Counterfeited Policies sold to Plaintiff and class members.

46.　Upon information and belief, Defendants forged and used the attached "Quota Share Reinsurance Agreement" that purports to be entered into among Issuing Carrier State National Company and Defendant Performance Insurance Company SPC effective July 1, 2019. (*See* Ex. A.)  While this document is purportedly signed by "David Cleff" as "EVP" for State National Company, upon information and belief, Mr. Cleff did not sign this document, and State National Company did not authorize anyone to agree to the terms set forth in this document.  Upon information and belief, the signature on this

document is a forgery.

47.     Upon information and belief, at no time has State National Company (1) been an Issuing Carrier for the Scheme, (2) received premiums, fees or other compensation in connection with the Scheme, (3) signed any agreements in connection with the Scheme, (or) provided Ambassador with a quote for this or any other program.

48.     Upon information and belief, numerous insurance policies and certificates have been issued to consumers, including Plaintiffs and class members, at the direction of Performance, Ambassador, and White in connection with the Scheme bearing forged State National Company marks.

49.     In fact, the purported "Quota Share Reinsurance Agreement" between State National Company and Performance represents that the Counterfeited Policies would be issued by Performance.[2]

50.     Upon information and belief, the Counterfeited Policies have been issued to consumers, including Plaintiffs and class members, at the direction of Performance, Ambassador, and White in numerous states, including California.

51.     Upon information and belief, Performance, Ambassador, and White were aware of the details of the Counterfeited Policies, including that they would be and, in fact, were issued to residents of numerous states, including those of California.

52.     For years, Plaintiff and class members made premium payments to Defendants on the Counterfeited Policies believing that such monies (or a portion thereof) were remitted to the supposed Issuing Carrier.  However, Defendants never remitted any monies to any Issuing Carrier. Instead, Defendants stole all such premium payments from Plaintiff and class members.

53.     Upon information and belief, Goldenstar Specialty has provided

_____

[2] *See* Ex. A, Secs. 1.01, 2.01 ("all Policies issued by and on behalf of [State National] by the General Agent"), 18.01 (Performance "has selected the General Agent to administer the business reinsured hereunder . . . . [I]t is recognized that the General Agent is acting on behalf of [Performance].").

administrative services to Gagliardi Insurance and Goldenstar Holdings in connection with issuing, distributing, administering, or procuring payment for the Counterfeited Policies that Gagliardi Insurance and/or Goldenstar Holdings sold.

54.     Upon information and belief, Goldenstar Specialty was aware of the details of the Counterfeited Policies, including that they would be and, in fact, were issued and sold to residents of numerous states, including those of California.

### Gagliardi Insurance Marketed Its Insurance Products to Plaintiff as a Complete Insurance Solution

55.     Upon information and belief, Gagliardi Insurance purposefully associated itself with national sports leagues to market itself to and attracts clients in California and throughout the United States.

56.     Gagliardi Insurance advertised its "insurance products" specifically on PONY National's website stating that, "For over three decades, Gagliardi has been the Official Insurance Provider for PONY Baseball/Softball.  Gagliardi is pleased to provide a complete insurance package highlighted by the discounted medical rates we provide for our PONY registered teams and organizations.  Our simple application provides you with an insurance plan that includes coverage and limits to protect all facets of your PONY organization.  By purchasing both Liability and Medical coverage, not only will you meet the requirements of PONY Baseball/Softball; you will meet the requirements of all major youth baseball and softball organizations."  (*See* Exs. B-C.)

57.     Gagliardi Insurance's statements on the PONY National's website were untrue in that: (1) Gagliardi Insurance did not provide a "complete insurance package"; (2) the coverage did not protect PONY organizations; and (3) liability and medical insurance together provided by Gagliardi Insurance did not meet the requirements of PONY Baseball/Softball.

58.     It was through Gagliardi Insurance's relationship with PONY National that Plaintiff became aware of Gagliardi Insurance, and eventually purchased the Counterfeited Policies.

**The Misrepresentations**

59.    Gagliardi Insurance knowingly or negligently made several misrepresentations to Plaintiff about the Counterfeited Policies, which Gagliardi Insurance asserted provided accident and health insurance to Plaintiff (the "Misrepresentations").

60.    Several of the Misrepresentations came in the form of documents that Gagliardi Insurance sent to Plaintiff:

a)    On or about February 6, 2018, Gagliardi Insurance sent to Plaintiff a Certificate of Liability Insurance (under policy numbers PK201800012200, EX201800000958, BAP 640000, and BAP 650000 for the period of 01/21/2018 to 01/21/2019), which falsely represented to provide accident and health insurance with a policy limit of $4,000,000 to Plaintiff issued by New York Marine & General Insurance (NAIC# 16608) and Starr Indemnity & Liability Company (NAIC# 38318).  (*See* Ex. D.)  Upon information and belief, no such policy was issued by New York Marine & General Insurance or Starr Indemnity & Liability Company.

b)    On or about January of 2019, Gagliardi Insurance sent to Plaintiff an Accident Insurance Coverage Summary (under policy number GAH040001 for the period of 01/21/2019 to 01/21/2020), which falsely represented to provide accident and health insurance to Plaintiff, including a $10,000 maximum benefit for "ACCIDENTAL DEATH AND DISMEMBERMENT" and $500,000 maximum benefit for "ACCIDENT MEDICAL AND DENTAL EXPENSE."  (*See* Ex. E.)  Upon information and belief, no such policy was issued by an Issuing Carrier.

c)    On or about January 25, 2019, Gagliardi Insurance sent to Plaintiff a Certificate of Liability Insurance (under policy numbers GSL2019040001, GSX2019040001, GSL2019040001, GAH040001 for the period of 01/21/2019 to 01/21/2020), which falsely represented to provide accident

and health insurance to Plaintiff issued by Lexington Insurance Company (NAIC# 19437).  (*See* Ex. F.)  Upon information and belief, no such policy was issued by Lexington Insurance Company.

d)  On or about January 17, 2020, Gagliardi Insurance sent to Plaintiff a Certificate of Liability Insurance (under policy numbers GSL2020110204, GSX2020110204, GSL2020110204, GAH110204 for the period of 01/21/2020 to 01/21/2021), which falsely represented to provide accident and health insurance to Plaintiff issued by State National Insurance Company (NAIC# 12831) and National Specialty Insurance Company (NAIC# 22608).  (*See* Ex. G.)  No such policy was issued by State National Insurance Company or National Specialty Insurance Company.

e)  On or about January of 2019, Gagliardi Insurance sent to Plaintiff documentation for Directors & Officers insurance (under policy number EPP9712261 for the period of 01/21/2019 to 01/21/2020), which falsely represented to provide a limit of liability of $1,000,000.  (*See* Ex. H.)  Upon information and belief, no such policy was issued by an Issuing Carrier.

f)  On or about January of 2020, Gagliardi Insurance sent to Plaintiff documentation for Directors & Officers insurance (under policy number EPP9712261 for the period of 01/21/2020 to 01/21/2021), which falsely represented to provide a limit of liability of $1,000,000.  (*See* Ex. I.)  No such policy was issued by an Issuing Carrier.

g)  On or about January 17, 2019, Gagliardi Insurance sent to Plaintiff a Certificate of Liability Insurance (under policy number EPP9712261 for the period of 01/21/2019 to 01/21/2020), which falsely represented to provide Directors & Officers insurance to Plaintiff issued by Great American Insurance Company (NAIC# 16691) with a policy limit of liability of $1,000,000.  (*See* Ex. J.)  Upon information and belief, no such policy was issued by Great American Insurance Company.

    h)  On or about January 17, 2020, Gagliardi Insurance sent to Plaintiff a Certificate of Liability Insurance (under policy number EPP9712261 for the period of 01/21/2020 to 01/21/2021), which falsely represented to provide Directors & Officers insurance to Plaintiff issued by Great American Insurance Company (NAIC# 16691) with a policy limit of liability of $1,000,000.  (*See* Ex. K.)  No such policy was issued by Great American Insurance Company.

    i)  Over the course of the Scheme, Gagliardi Insurance sent several claim forms and claim instruction documents to Plaintiff with full knowledge that no insurance policy was ever issued to cover any claim submitted under the forged and non-existent "insurance policies."  (*See* Exs. L-N.)

61.    Upon information and belief, all Defendants were aware of, encouraged, and actively participated in Gagliardi Insurance's Misrepresentations to Plaintiff.

62.    Upon information and belief, Gagliardi Insurance made misrepresentations to all class members (the "Class Misrepresentations") that were similar to the Misrepresentations.

63.    Upon information and belief, all Defendants were aware of, encouraged, and actively participated Gagliardi Insurance's Class Misrepresentations.

64.    Gagliardi Insurance omitted to inform Plaintiff that the Counterfeited Policies were not backed or issued by any Issuing carrier (the "Omissions").

65.    Upon information and belief, Gagliardi Insurance omitted to inform class members that the Counterfeited Policies were not backed or issued by any Issuing carrier (the "Class Omissions").

66.    Upon information and belief, all Defendants were aware of, encouraged, and actively participated Gagliardi Insurance's Class Omissions.

67.    Upon information and belief, Mr. Gagliardi signed and directly or indirectly provided all of the documents related to the Misrepresentations and Class Misrepresentations to Plaintiff and class members.

**Discovery of the Scheme**

68.     On or about October 27, 2020, Gagliardi Insurance informed Plaintiff that the insurance policies that Gagliardi Insurance provided to Plaintiff were the subject of a federal lawsuit by several Issuing Carriers for Defendants' unauthorized use of the Issuing Carriers' mark in the enacting the Scheme (the "Issuing Carrier Suit"). Gagliardi Insurance claimed ignorance of the Scheme, and denied any involvement in it.

69.     Currently Gagliardi Insurance's website states the following in relation to the Scheme:

**ON OCTOBER 27TH, WE SENT YOU A NOTICE REGARDING INSURANCE POLICIES THAT GAGLIARDI PROVIDED TO YOU, WHICH ARE THE SUBJECT OF A FEDERAL COURT LAWSUIT. WE ARE WRITING TO WITHDRAW THAT LETTER AND REPLACE IT WITH THE ATTACHED VERSION, WHICH CLARIFIES THAT STATE NATIONAL NEVER ISSUED ANY POLICIES TO GAGLIARDI'S CLIENTS.**

HELLO GAGLIARDI INSURANCE FAMILY,
THE LAST SEVERAL MONTHS HAS BEEN A VERY DIFFICULT AND PAINFUL PERIOD FOR GAGLIARDI INSURANCE SERVICES, INC. FOR OVER 35 YEARS, OUR COMPANY HAS ALWAYS TAKEN CARE OF ITS CLIENTS AND INSUREDS AND WORKED VERY HARD TO PROVIDE BOTH A HIGH-QUALITY INSURANCE PRODUCT AND EXCEPTIONAL SERVICE. UNFORTUNATELY, RECENT EVENTS, WHICH WERE OUT OF OUR CONTROL, HAVE INTERVENED.

WE PROVIDED OUR CLIENTS WITH AN INSURANCE POLICY UNDER THE NAME AND AUSPICES OF STATE NATIONAL INSURANCE COMPANY, IN COMBINATION OF OTHER INSURANCE BACKED BY ANOTHER CARRIER. WE WERE PROVIDED WITH FORMAL SIGNED DOCUMENTATION INDICATING THAT STATE NATIONAL HAD AGREED TO PROVIDE ITS POLICIES. WE WERE SHOWN EVIDENCE THAT A PREMIUM HAD BEEN PAID TO STATE NATIONAL TO APPROPRIATELY COMPENSATE STATE NATIONAL FOR ITS PARTICIPATION AS A FRONT CARRIER. FINALLY, WE WERE GIVEN SPECIFIC DIRECTION THAT WE COULD DELIVER POLICIES TO OUR CLIENTS UNDER THE STATE NATIONAL NAME BY THE AGENT WHO, WE WERE LED TO BELIEVE, HAD THE

AUTHORITY TO DO SO.

STATE NATIONAL NEVER ISSUED POLICIES TO GAGLIARDI'S CLIENTS. AFTER GAGLIARDI ISSUED POLICIES FOR OVER A YEAR WITHOUT ANY NOTIFICATION OF ANY PROBLEMS, STATE NATIONAL SENT A FORMAL DEMAND TO US AND OTHERS TO IMMEDIATELY STOP USING ITS NAME AND POLICIES. IT CLAIMED THAT THE SIGNATURE OF THE STATE NATIONAL AUTHORIZED REPRESENTATIVE ON THE DOCUMENTATION PROVIDED TO US WAS FORGED AND THAT IT NEVER RECEIVED ANY PREMIUM PAYMENT. IT IS NOW THE SUBJECT OF A FEDERAL LAWSUIT OF WHICH WE ARE A PART.

AN ORDER HAS BEEN ENTERED IN THE FEDERAL LAWSUIT THAT THE INSURANCE POLICIES AND CERTIFICATES BEARING STATE NATIONAL'S NAME ARE NOT EFFECTIVE AND THERE IS NO COVERAGE FROM STATE NATIONAL UNDER THE POLICIES AND CERTIFICATES. AS A RESULT OF THE LAWSUIT AND THE CLAIMS OF STATE NATIONAL, THE CLAIMS PROGRAM HAS BEEN INTERRUPTED. WE CANNOT RETURN ANY PREMIUMS WITHOUT EXPRESS APPROVAL OF STATE NATIONAL AND THE COURT. WE ARE WORKING VERY DILIGENTLY TO MAKE SURE CLAIMS CAN PAID IN THE ORDINARY COURSE, BUT THAT PROCESS HAS NOT YET BEEN FULLY REESTABLISHED.

WE SINCERELY REGRET WHAT HAS OCCURRED AND ARE EXAMINING OUR OPTIONS AS TO HOW TO PROCEED.

**FOR ALL CLAIMS, PLEASE SEND INFO TO SALES@GSPORTSINSURANCE.COM**

**IF YOU ARE LOOKING TO PURCHASE A NEW POLICY OR ARE RENEWING COVERAGE, PLEASE CONTACT OUR FRIENDS AT O2 SPORTS INSURANCE AND THEY WILL BE HAPPY TO HELP, PLEASE ASK FOR KANDACE KALIN AT:"**

(*See* Ex. O, https://www.gsportsinsurance.com/, last accessed on January 26, 2021.)

### Gagliardi Insurance's Continued Bad Acts

70.     Upon information and belief, on August 19, 2020, State National Insurance Company ("State National") sent a letter to Gagliardi Insurance directing it to cease and

desist using State National's marks.

71.     Upon information and belief, Gagliardi Insurance failed to do so and instead continued to issue fraudulent certificates without State National's permission.

72.     Upon information and belief, State National obtained a copy of the attached certificate of insurance listing State National Insurance Company" as the insurance company and "National Specialty Insurance Company" as the alternate insurer and purporting to provide coverage to a sports team for the policy period from September 9, 2020 to September 9, 2021 under policy number GBL2020100734.  (*See* Ex. O-1.)  The certificate lists Gagliardi Insurance as the "producer," and a Gagliardi Insurance representative signed the certificate.

73.     Upon information and belief, State National did not issue or authorize issuance of this policy, which was issued by Gagliardi Insurance on September 10, 2020, nearly a month after State National sent the August 19, 2020 letter instructing it to cease and desist using State National's mark.

## Defendants' Judicial Admissions and Lack of Ownership of their Misconduct

74.     In their response to the Issuing Carrier Suit, Defendants Ambassador and White state that they are willing "take 100% of the total liability of all claims into the insurance program." (*See* Ex. P at 1 (Preamble).)

75.     However, downplaying the seriousness of the allegations of the Issuing Carrier Suit, Ambassador and White characterize the issue as a simple "business dispute over whether or not the captive insurance programs at issue had permission to use State National's name on policy documents" and claim that they are "unaware of any damages that have resulted to State National flowing from the captive insurance programs."  (*See id*.)

76.     Similarly, Gagliardi Insurance, in its response to the Issuing Carrier Suit, severely downplays the seriousness of the suit stating that:

[This dispute] is not about money, or fraud, or counterfeiting. It is about

whether or not, for about a one-year period, these captives, Goldenstar in particular, had permission to use Lexington's name on the policies, with everyone understanding that the captives would take 100% of all of the liability. It is, therefore, a contract dispute.

(*See* Ex. Q at 1 (Preamble).)

77.      Upon information and belief, no Defendant has yet to produce a signed contract with any Issuing Carrier in the Issuing Carrier Suit evidencing (1) the formation of a contract between any Defendant and an Issuing Carrier with regards to the Scheme or (2) a foundation for the belief that such a contract was formed.

78.      Upon information and belief, no Defendant has yet to produce any official documentation from an Issuing Carrier in the Issuing Carrier Suit evidencing (1) the formation of a contract between any Defendant and an Issuing Carrier with regards to the Scheme or (2) a foundation for the belief that such a contract was formed.

79.      Further, Defendants have failed to make any effort to offer restitution to Plaintiff or class members with regards to the Scheme.

## CLASS ACTION ALLEGATIONS

80.      Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of the following nationwide Class (the "Class" or the "Nationwide Class"):

**All purchasers of an insurance policy bounded by Gagliardi Insurance Services, Inc. that made such purchase in the United States on or after January 1, 2011 (the "Class Period").**

81.      Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of state claims in the alternative to the nationwide claims on behalf of a subclass for the State of California (the "California Class"), defined as follows:

**All purchasers of an insurance policy bounded by Gagliardi Insurance Services, Inc. that made such purchase in the State of California on or**

**after January 1, 2011.**

82.    Excluded from the Classes are Defendants; any parent, affiliate, or subsidiary of any Defendant; any entity in which any Defendant has a controlling interest; any Defendant's officers or directors; or any successor or assign of any Defendant.  Also excluded are any Judge or court personnel assigned to this case and members of their immediate families.

83.    Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

84.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the Classes are so numerous that joinder of all members is impracticable.  While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes the Class contains approximately thousands of members, and the California Class contains approximately hundreds of members.  Members of the Classes may be identified through objective means, including through Defendants' records.  members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

85.    **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirements, this action involves common questions of law and fact as to all members of the Class, which predominate over any questions affecting individual members of the Class.  Such questions of law and fact common to the Classes include, but are not limited to:

      a.    Whether Defendants violated the federal RICO statute, by engaging in a pattern of fraud in connection with the sale of the Counterfeited Policies, including:

            i.    Whether Defendants committed one or more instances of mail fraud within the meaning of 18 U.S.C. §1961(1)(B) and 18 U.S.C. §1341; and

      ii.   Whether Defendants committed one or more instances of wire fraud within the meaning of 18 U.S.C. §1961(1)(B) and 18 U.S.C. §1343.

b.    Whether Defendants had a legal duty to ensure that the information that Defendants disseminated to members of the Classes was not materially inaccurate or misleading;

c.    Whether documents and statements publicly disseminated by Defendants relating to their fraudulent "insurance" policies contained materially false and misleading statements and representations, and/or omitted to state material facts necessary to make the statements made not false and misleading;

d.    Whether Defendants acted willfully, recklessly, or negligently in disseminating materially false or misleading information, or omitting to state and/or in misrepresenting material facts, in connection with the sale of their fraudulent "insurance policies";

e.    Whether Defendants' conduct, including its failure to act, resulted in or was the cause-in-fact or proximate cause of Plaintiff's and members of the Classes' damages;

f.    Whether Plaintiff and members of the Classes have sustained damages by reason of Defendants' misrepresentations and omissions, and the pattern of fraudulent behavior complained of herein and, if so, the proper measure of such damages; and

g.    Whether Plaintiff and members of the Classes are entitled to relief, including equitable relief.

86.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with rule 23(a)(3), Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff purchased counterfeited and nonexistent "insurance policies" from Defendants. Plaintiff's damages and injuries are akin to other members of the Classes, and Plaintiff seeks relief consistent with the relief of the members of the Classes.

87.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Classes because Plaintiff is a member of the Classes and is committed to pursuing this matter against Defendants to obtain relief for the Class. Plaintiff has no conflicts of interest with members of the Classes. Plaintiff's Counsel are competent and experienced in litigating consumer class actions, including insurance matters. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class' interests. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.

88.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual Plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Classes are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants wrongful conduct would be impracticable. Individual litigation by each member of the Classes would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

89.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through its uniform conduct, acted or refused to act on grounds generally applicable to the Classes as a whole, making injunctive and declaratory relief appropriate to the Classes as a whole.

90.    Likewise, particular issues under Rule 23(c)(4) are appropriate for

certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues are set forth in Paragraph 64(a)–(g) above.

91.     Finally, all members of the proposed Classes are readily ascertainable. Defendants have access to information regarding the organizations which purchased their Counterfeited Policies.  Using this information, members of the Classes can be identified and their contact information ascertained for the purpose of providing notice to the Classes.

**FIRST CLAIM FOR RELIEF**
**Racketeer Influenced and Corrupt Organizations Act**
**pursuant to 18 U.S.C. § 1961 *et seq.***
***(On behalf of Plaintiff and the Class, or Alternatively,***
***on Behalf of Plaintiff and the California Class)***
***(Against all Defendants)***

92.     Plaintiff and members of the Classes restate and reallege the preceding paragraphs as if fully set forth herein.

93.     Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. §1964(c) and brings this action pursuant to 18 U.S.C. §1962(c).

94.     Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

95.     The Scheme described in this Complaint is an "enterprise" within the meaning of 18 U.S.C. §1961(4).

96.     The Scheme involved and affected interstate commerce.

97.     Each Defendant's actions in perpetuating the Scheme involved and affected interstate commerce and/or foreign commerce.

98.     Defendants engaged in a pattern of racketeering activity over a period of at least ten years, which involved, among other things, forging the Counterfeited Policies, repeatedly effectuating the sale of the Counterfeited Policies to Plaintiff and potentially thousands of other persons with the false promise that the policies represented valid and

legitimate insurance coverage, knowing full well that this promise was false, and that the so-called "insurance" they were selling, was actually nonexistent.

99.   Defendants engaged in the Scheme for the purpose of obtaining and depriving Plaintiff and class members of property by deceit.

100.   The Scheme includes but is not limited to:

a)  One or more instances of mail fraud within the meaning of 18 U.S.C. §1961(1)(B) and 18 U.S.C. §1341; and

b)  One or more instances of wire fraud within the meaning of 18 U.S.C. §1961(1)(B) and 18 U.S.C. §1343.

101.   Defendants utilized both interstate mail and wires to further the Scheme.

102.   Given the length and duration of the pattern of racketeering activity engaged in, and the ease with which this same pattern could be continued through other corporate enterprises which, there is every likelihood that these same individual and corporate Defendants will continue to engage in this same pattern of fraudulent behavior.  Thus, the threat of the continuation of the pattern of racketeering activity complained of herein is both real and substantial.

103.   As a result of the Scheme, Plaintiff and members of the Classes have been financially injured by the amount of premium payments made for the Counterfeited Policies to Defendants, plus the value of insurance claims uncovered and unpaid by reason of Defendants' fraudulent scheme, and consequential damages.  Plaintiff and the members of the Classes are further entitled to recover treble damages and attorneys' fees, pursuant to the federal RICO statute.

## SECOND CLAIM FOR RELIEF
### Conversion
***(On behalf of Plaintiff and the Class, or Alternatively,
on Behalf of Plaintiff and the California Class)
(Against all Defendants)***

104.   Plaintiff and members of the Classes restate and reallege the preceding

22

paragraphs as if fully set forth herein.

105.   Plaintiff and members of the Classes have the right to possess the insurance premium payments made to Defendants in exchange for the Counterfeited Policies sold as part of the Scheme (the "Personal Property").

106.   Defendants intentionally interfered with Plaintiff's and members of the Classes' Personal Property by effectuating the Scheme.

107.   Defendants' effectuating of the Scheme deprived Plaintiff and members of the Classes of their Personal Property.

108.   Defendants' effectuating of the Scheme has caused Plaintiff and members of the Classes damages.

109.    In enacting the Scheme, Defendants acted with oppression, fraud, malice, evil motives, reckless indifference, and a conscious disregard for the rights of others, making punitive damages appropriate.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
***(On behalf of Plaintiff and the Class, or Alternatively,***
***on Behalf of Plaintiff and the California Class)***
***(Against all Defendants)***

110.   Plaintiff and members of the Classes restate and reallege the preceding paragraphs as if fully set forth herein.

111.   In paying insurance premiums for the Counterfeited Policies, Plaintiff and members of the Classes conferred a benefit (the "Benefit") upon Defendants.

112.   Defendants accepted, retained, and appreciated the value of the Benefit.

113.   Upon information and belief, all Defendants were aware of the Scheme.

114.   Upon information and belief, all Defendants were aware that the Benefit was obtained as the result of the Scheme.

115.   The retention of the Benefit by Defendants would be at the expense of Plaintiff and members of the Classes.

116.   The circumstances of the Scheme would make it unjust for Defendants to retain the Benefit Plaintiff and members of the Classes conferred upon Defendants.

## FOURTH CLAIM FOR RELIEF
**Unfair Competition pursuant to Cal. Bus. & Prof. Code § 17200 *et seq.***
*(On behalf of Plaintiff and the California Class)*
*(Against all Defendants)*

117.   Plaintiff and members of the Classes restate and reallege the preceding paragraphs as if fully set forth herein.

118.   Each Defendant is a "business" as defined by § 17200.

119.   Defendants, by effectuating the Scheme, engaged in unlawful business acts and practices.

120.   Defendants, by effectuating the Scheme, violated the RICO Act and committed the acts of conversion and fraud.

121.   Defendants, by effectuating the Scheme, engaged in unfair business acts and practices.

122.   Defendants, by effectuating the Scheme, inflicted upon Plaintiff and members of the Classes substantial injuries that (a) were not be outweighed by any countervailing benefits to consumers or competition and (b) Plaintiffs and class members could not reasonably have avoided.

## FIFTH CLAIM FOR RELIEF
**Negligence**
*(On behalf of Plaintiff and the Class, or Alternatively,*
*on Behalf of Plaintiff and the California Class)*
*(Against all Defendants)*

123.   Plaintiff and members of the Classes restate and reallege the preceding paragraphs as if fully set forth herein.

124.   Defendants had a legal duty to make and ensure that accurate representations

were made to Plaintiff and Class Members regarding the Counterfeited Policies sold under the Scheme.

125.    Defendants breached a legal duty in purposefully or negligently making inaccurate representations to Plaintiff and Class Members regarding the Counterfeited Policies sold under the Scheme.

126.    Defendants breached a legal duty in purposefully or negligently allowing inaccurate representations to be made to Plaintiff and Class Members regarding the Counterfeited Policies sold under the Scheme.

127.    Defendants made, allowed, encouraged, or enabled to be made the Misrepresentations to Plaintiff and members of the Classes.

128.    Defendants made, allowed, encouraged, or enabled to be made material misrepresentations to Plaintiff and members of the Classes regarding the Counterfeited Policies sold under the Scheme.

129.    Defendants' Misrepresentations, actions, and omissions caused damages to Plaintiff and members of the Classes.

130.    Defendants' actions were the cause-in-fact and proximate cause of Plaintiff's and Class Member's damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the Class, and the California Class respectfully seeks from the Court the following relief:

a.    Certification of the Classes;

b.    Appointment of Plaintiff as representative of the Classes and its undersigned counsel as Class counsel for the Classes;

c.    Award Plaintiff and members of the proposed Classes compensatory and punitive damages;

d.    Award Plaintiff and members of the proposed Classes equitable, injunctive and declaratory relief, including restitution and enjoining Defendant's perpetuation of the Scheme and other illegal and unlawful business practices

as alleged here;

e.     Award Plaintiff and members of the proposed Classes pre-judgment and post-judgment interest as permitted by law;

f.     Award Plaintiff and members of the proposed Classes reasonable attorney fees and costs of suit, including expert witness fees; and

g.     Award Plaintiff and members of the proposed Classes any further relief the Court deems proper.

## JURY DEMAND

Plaintiff, on behalf of themselves and the Classes of all others similarly situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

By:     */s/ Michael F. Ram*
           Michael F. Ram

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Ra O. Amen (*Pro Hac Vice*)
Ramen@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

Gretchen M. Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
NELSON & FRAENKEL LLP

601 S. Figueroa Street., Suite 2050
Los Angeles, California, 90017
Telephone:  (213) 622-6469
Facsimile: (213) 622-6019 fax

*Attorneys for Plaintiff and the Proposed
Classes*