

**GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

CAUSE NO: FSD          OF 2021

IN THE MATTER OF SECTIONS 131, 224(5) and 225(2) OF THE COMPANIES ACT (2021 REVISION) (AS AMENDED)

AND IN THE MATTER OF COMPANIES WINDING UP RULES (2018), ORDER 15 (AS REVISED)

AND IN THE MATTER OF PERFORMANCE INSURANCE COMPANY SPC (IN VOLUNTARY LIQUIDATION)

### PETITION FOR LEAVE AND COURT SUPERVISION

**To: The Grand Court of the Cayman Islands**

This humble petition of Kenneth M. Krys and Neil S. Dempsey of KRyS Global, 23 Lime Tree Bay Avenue Governors Square, Building 3, Ground Floor, PO Box 31237, KY1-1205, Grand Cayman, Cayman Islands (the "**Petitioners**"), acting in their capacity as joint voluntary liquidators ("**JVLs**") of Performance Insurance Company SPC (the "**Company**"), shows that:

1.  The purpose of this petition is to seek an order that:

    a)  Leave be granted in respect of the Shareholder Resolution and Directors' Resolution giving effect to the voluntary winding up of the Company and the appointment of Kenneth M. Krys and Neil S. Dempsey of KRyS Global as joint voluntary liquidators of the Company pursuant to sections 224(5) and 225(2) of the Companies Act; and

    b)  The voluntary winding up of the Company be made subject to the supervision of the Court pursuant to section 131 of the Companies Act and that the JVLs be appointed as the joint official liquidators of the Company.

**BACKGROUND**

2. The Company was incorporated as an exempted segregated portfolio company on 21 January 2016 under the laws of the Cayman Islands. The registration number of the Company issued by the Registrar of Companies ("**ROC**") is 307829.

3. The registered office for the Company is Kynect Risk Management Limited, P.O. Box 445, 3rd Floor Bayshore Centre, 31 Warwick Road, George Town, Grand Cayman, KY1-1106, Cayman Islands ("**Kynect**"). Kynect acts as the Insurance Manager for the Company as well as its segregated portfolios and manages the routine aspects of the business of the Company and the segregated portfolios from within the Cayman Islands.

4. The Company is the holder of a Class B(iii) Insurer's License under the Insurance Law, 2010 and operates within the captive insurance industry through its 12 segregated portfolios:

   a)  Bottini Insurance SP
   b)  Gen-1 Insurance Company SP
   c)  Goldenstar Holdings Company SP ("**Goldenstar SP**")
   d)  Greystone Insurance SP ("**Greystone SP**")
   e)  Hudson York Insurance Company SP ("**Hudson York SP**")
   f)  Omega Insurance Company SP ("**Omega SP**")
   g)  Performance 5 SP
   h)  Prewett Insurance Company SP ("**Prewett SP**")
   i)  Smart Insure SP
   j)  SSS Insurance SP
   k)  Sustainable Insurance Company SP
   l)  Triangle RGK SP

   (together referred to as the "**Segregated Portfolios**")

5. The Company's current directors are Larry Linne ("**Mr Linne**") and Brandon Mueller ("**Mr Mueller**") (together referred to as the "**Directors**").

6. The Company and its Segregated Portfolios are governed by the Amended and Restated Memorandum of Association and Articles of Association adopted by special resolution passed on 30 August 2017.

7. The Company's sole voting and participating shareholder is Performance Insurance LLC, a limited liability company duly incorporated under the laws of the State of Tennessee in the United States of America with its principal address being 9700 Park Plaza Avenue, Unit 201, Louisville, Kentucky, 40241-2287, United States of America ("**Sole Shareholder**").

**EVENTS LEADING TO VOLUNTARY LIQUIDATION**

(i) <u>Kentucky Litigation</u>

8. On or about 11 May 2020, the Company on behalf of two of its Segregated Portfolios, Goldenstar SP and Smart Insure SP, were named as defendants in a lawsuit before the United States District Court for the Western District of Kentucky – Louisville Division, Case No. 2:20-cv-330-JRW, commenced by the Lexington Insurance Company ("**Lexington Insurance**"), a wholly owned subsidiary of American International Group, Inc. ("**AIG**"), resulting from alleged fraudulent activities by the Company's former director, Brandon White ("**Mr White**") and its former captive consultant to the Company and its Segregated Portfolios, The Ambassador Group LLC d/b/a Ambassador Captive Solutions ("**Ambassador**") (hereinafter referred to as the "**Kentucky Litigation**").

9. State National Insurance Company, Inc., a company incorporated under the laws of the State of Texas, United States of America, intervened in the Kentucky Litigation and brought claims against Ambassador, Mr White, and the Company on behalf of Goldenstar SP and Smart Insure SP.

10. As a result of various interventions and amendments, the parties to the Kentucky Litigation consist of the following individuals and entities:

   a) Lexington Insurance (Plaintiff);
   b) State National Insurance Company, Inc. and National Specialty Insurance Company (together referred to as "**State National**") (Plaintiff-Intervenors);
   c) Ambassador (Defendant and Defendant in Intervention);
   d) Mr White (Defendant and Defendant In Intervention);
   e) Gagliardi Insurance Services, Inc. ("**Gagliardi**") (Defendant and Defendant in Intervention);
   f) Goldenstar Specialty Insurance, LLC ("**Goldenstar Specialty**") (Defendant);
   g) Performance Insurance Company SPC on behalf of Goldenstar SP and Smart Insure SP (Defendant and Defendant in Intervention); and

    h)     ePremium Insurance Agency LLC ("**ePremium Insurance**") (Defendant in Intervention).

11.     The substance of the claims by Lexington Insurance and State National is that Mr White and Ambassador allegedly perpetuated fraudulent schemes referred to as the "Gagliardi Scheme" and the "Madera Scheme" in which Mr White and Ambassador facilitated the issuance of counterfeit/fraudulent insurance policies and certificates in the names of Lexington Insurance and State National to various insured parties, and led those insured parties to believe that they were covered under the counterfeit insurance policies and certificates.

12.     Goldenstar SP and Smart Insure SP are exposed to liabilities as a result of the alleged actions of Mr White and Ambassador based on claims including, *inter alia*, counterfeiting and trademark infringement; deceptive trade practices; unfair competition and false designation of origin; misappropriation of name; and insurance fraud. The JVLs have been informed by the Directors that while the Company is named as a defendant, the Plaintiffs are seeking damages against Goldenstar SP and Smart Insure SP.

13.     While that may or may not be the case, there are various pending filing and discovery obligations within the Kentucky Litigation that the Company must comply with which will cause a significant burden on the Company's and ultimately the liquidation estate's resources. Additionally, the JVLs have been informed by the Company's Kentucky legal counsel, to which attorney client privileged is not waived, that the parties to the Kentucky Litigation were negotiating a consent order for the appointment of a court monitor to manage the bank account of Goldenstar SP and pay claims made against the segregated portfolio, which will have to be reconsidered in light of the voluntary liquidation of the Company.

<u>(ii) California Class Action</u>

14.     The Petitioners recently discovered that a class action lawsuit ("**California Class Action**") was commenced in January 2021 in the United States District Court for the Central District of California, by Del Obispo Youth Baseball, Inc. d/b/a Dana Point Youth Baseball ("**DPYB**") individually and on behalf of the class of other individuals and entities against Ambassador, Mr White, the Company, Goldenstar Specialty and other unnamed defendants ("**Class Action Defendants**").

15. The substance of the claims by DPYB against the Class Action Defendants is similar to that of the Kentucky Litigation in that DPYB suffered damages as a result of the alleged fraudulent scheme to sell counterfeit/non-existent insurance policies to provide accident, health and other insurance primarily to youth sports teams, leagues and athletes.

16. DPYB alleges that on or about 27 October 2020, Gagliardi informed DPYB that the insurance policies Gagliardi provided to DPYB and other members of the class were subject to the Kentucky Litigation.

17. The Company and the other California Class Action defendants are exposed to liability on the basis of claims by DPYB rooted in the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 (RICO) for mail and wire fraud; conversion; unjust enrichment; unfair competition and negligence.

18. The California Class Action is still in its early stages as the Company has not been properly served yet, and at the date of their appointment, the Company had not retained Californian legal counsel.

<u>(iii) Receivership of Segregated Portfolios</u>

19. The Petitioners are aware that one of the Company's Segregated Portfolios, Hudson York SP, is the subject of a receivership order granted by this Court (Cause No. FSD 118 of 2020) resulting from the financial difficulties and doubtful solvency of the segregated portfolio; and that there is a possibility of further receivership applications in respect of two more of the Company's Segregated Portfolios.

20. The Petitioners understand that David Griffin and Andrew Morrison of FTI Consulting, Suite 3212, 53 Market Street, Camana Bay, Grand Cayman, PO Box 30613, KY1-1203 were appointed as the joint receivers ("**FTI Receivers**") over Hudson York SP at some point in 2020 for the purpose of the orderly closing down of the business of or attributable to the Hudson York SP and the distribution of the segregated portfolio assets attributable to the Hudson York SP and to those entitled to same.

21. The Petitioners further understand that the receivership may be nearing completion. The FTI Receivers have been requested and advised they are providing a summary on the status of the receivership.

<u>(iv) CIMA Actions</u>

22. On or about 17 December 2020, the Cayman Islands Monetary Authority ("**CIMA**") issued a cease and desist order against the Company, leaving the Company unable to generate income by renewing existing or placing new business into the Company ("**Cease and Desist Order**").

23. The JVLs understand from their discussions with the Directors that the Company complied with the Cease and Desist Order, but that the inability to renew or obtain insurance coverage for many of the Segregated Portfolios, and the adverse impact of the above litigation in the United States meant that the interests of the Segregated Portfolios was to novate those not tainted by the U.S. litigation to other insurance companies. The Directors eventually determined that the Company could no longer continue as a going concern and that the Company should be wound up in an orderly liquidation.

24. On 25 February 2021, CIMA issued a letter to the Directors advising that the Company was in breach of various provisions of the Insurance Act, 2010 and that it proposes to suspend the Company's Class B(iii) Insurer's License ("**Suspension Notice**"). The JVLs understand that the issue of the Suspension Notice accelerated the Directors' and the Sole Shareholder's decision to voluntarily wind up the Company, and accordingly resolved to wind up the Company the following day.

25. As a result of the voluntary winding up of the Company, the Petitioners do not intend on opposing the suspension of the Company's Class B(iii) Insurer's License.

26. The JVLs have informed CIMA of their appointment and provided a verbal update on 4 March 2021 on the steps taken. Since then, the JVLs have written to and met with CIMA to clarify certain regulatory requirements and how they intend to approach those matters.

**COMMENCEMENT OF VOLUNTARY LIQUIDATION**

27. The Directors and the Sole Shareholder of the Company determined that it was in the Company's best interests to wind up the Company and appoint voluntary liquidators for the following reasons:

    a) The Company and its Segregated Portfolios have all, directly or indirectly, been significantly affected by the alleged fraudulent activities of Mr White and Ambassador;

    b) The Company was unable to generate income as a result of CIMA's Cease and Desist Order; and

    c) The Company faces significant liability exposure in respect of the Kentucky Litigation as well as potential further litigation.

28. At an extraordinary general meeting of the Company held at George Town, Grand Cayman, Cayman Islands on 26 February 2021, the Sole Shareholder of the Company (by proxy) passed special resolutions resolving ("**Shareholder Resolution**"), *inter alia*, that:

    a) The Company be wound up on a voluntary basis;

    b) Kenneth Krys and Neil Dempsey of KRyS Global be appointed as the joint voluntary liquidators of the Company; and

    c) The joint voluntary liquidators, if deemed appropriate and reasonable, make an application to the Grand Court of the Cayman Islands to have the voluntary liquidation supervised and to seek recognition of their appointment in the U.S. Bankruptcy Court.

29. At a meeting of the board of directors of the Company held at George Town, Grand Cayman, Cayman Islands on 26 February 2021, the Directors (by proxy) passed similar resolutions with respect to the voluntary winding up of the Company, the appointment of the JVLs and the applications for supervision by the Grand Court as well as Chapter 15 recognition by the U.S. Bankruptcy Court ("**Directors' Resolution**").

30. In the premises:

    a) The Company resolved by special resolution that it be wound up voluntarily in accordance with section 116(c) of the Companies Act; and

    b) The voluntary winding up of the Company is deemed to have commenced on 26 February 2021 ("**Commencement Date**"), being the date of the passing of the Shareholder Resolution in accordance with section 117(1)(a) of the Companies Act.

**DECLARATION OF SOLVENCY**

31. On or about 1 March 2021, Mr Linne and Mr Mueller, in their capacity as directors of the Company, executed a declaration of solvency confirming that the Company will be able to pay its debts in full, together with interest at the prescribed rate within a period of twelve (12) months from the commencement of the winding up on the basis of management accounts as of 31 December 2020 and all known assets and liabilities as of 1 March 2021 ("**DoS**").

32. The DoS notes that the Directors are aware of litigation in the United States involving the Company (and also against two of the Segregated Portfolios, Goldenstar SP and Smart Insure SP) and that the Company has made a counterclaim within the litigation. The DoS also notes that the Directors are aware that certain Segregated Portfolios of the Company are in or are about to be placed into receivership.

33. Despite the execution of the DoS, the Petitioners consider the Company to be insolvent or of doubtful solvency due to its current cash position and because the Directors' assessment of the solvency of the Company does not take into account accrued (but unbilled) professional fees as of the date of the DoS, as well as any contingent liability in the Kentucky Litigation or California Class Action, or the costs associated with those litigations after the date of the DoS.

**CONDUCT OF THE VOLUNTARY LIQUIDATION**

34. Since the Commencement Date, the JVLs have taken the following steps/actions:

   a) Complied with the statutory notification of the voluntary liquidation appointment to the ROC and CIMA;
   b) Notified the Directors of their duties post-liquidation and to retain the Company's books and records;
   c) Notified the bank and took steps to change the account signatories;
   d) Collect in books and records, including the current management accounts;
   e) Provide a verbal update to CIMA on the status of the liquidation and future steps;
   f) Contacted legal counsel retained in the Kentucky Litigation to inquire about the status, priorities and imminent deadlines;
   g) Retained Cayman and US legal counsel to address this Petition and Chapter 15 recognition;

    h)    Retained Kynect to assist the JVLs with the day to day management of the Company and the Segregated Portfolios given their background as the Company's insurance manager prior to the commencement of the liquidation;

    i)    Progressed the novation of two of the Segregated Portfolios which, prior to the appointment of the JVLs, the Company was advised by CIMA that it had no objections to the novations;

    j)    Addressed priority operational matters faced by the Company and its Segregated Portfolios, including the payment of outstanding invoices and retainers for novation services, tax matters and audited accounts; and

    k)    Communicated with the Segregated Portfolios and others who have inquiries related to the impact of the voluntary liquidation.

35. All steps/actions by the JVLs have taken place within the Cayman Islands.

**REQUIREMENT FOR LEAVE AND COURT SUPERVISION**

36. By operation of section 224(5) of the Companies Act, the Shareholder Resolution and Directors' Resolution for the voluntary winding up of the Company and the appointment of the JVLs is not effective without leave of the Court because one of the Company's Segregated Portfolios, Hudson York SP, is the subject of a receivership order granted by this Court.

37. The Petitioners state that there have been no adverse results or prejudice in appointing the JVLs without leave, as it was always the intention of the Company's Sole Shareholder, the Directors and the JVLs to seek Court supervision.

38. The Petitioners therefore request leave of this Court pursuant to sections 224(5) and 225(2) giving retroactive effect to the Shareholder Resolution and the Directors' Resolution placing the Company into voluntary liquidation and appointing the JVLs.

39. As noted above, the JVLs have taken various steps since the Commencement Date, primarily as a result of the litigation proceedings in the United States of America as well as CIMA's Cease and Desist Order and Suspension Notice, requiring the JVLs to take urgent action.

40. It is the Petitioners' view that the voluntary winding up of the Company should be made subject to the supervision of the Court because the company is or is likely to become insolvent due to its current cash position and as a result of the Kentucky Litigation, California Class Action and other possible litigation, and because the supervision of the Court will facilitate a more effective,

economic liquidation of the Company and its Segregated Portfolios in the interests of the contributories and creditors for the following reasons:

a) The complexity of the segregated portfolio company structure coupled with the various known and unknown legal proceedings against the Company and certain of its Segregated Portfolios, could lead to contentious issues arising during the course of the voluntary liquidation which will require the exercise of powers afforded to official liquidators, and of this Court, to adjudicate and determine any such issues.

b) As a result of the Kentucky Litigation and California Class Action, as well as the unknown potential for new litigation, against the Company and its Segregated Portfolios, the Company will require the benefit of the statutory moratorium afforded under section 97 of the Companies Act and may need to seek the Court's intervention to restrain foreign proceedings, all of which are aimed at the orderly liquidation of the Company and its Segregated Portfolios within the Cayman Islands and to resolve any disputes in a single forum, in the best interests of the Company and its stakeholders.

c) The Company had retained Conyers to seek the receivership of Omega SP and Goldenstar SP, and were awaiting CIMA approval of same. Court supervision will permit the liquidation of the Company and Segregated Portfolios in a more cost efficient and effective manner.

d) The Suspension Notice identifies concerns that CIMA has with respect to the conduct of the Directors, and a Court supervised liquidation is likely to give CIMA more comfort that the Company is wound up in an orderly manner.

e) The Company and its Segregated Portfolios may have legal claims to be advanced against Mr White, Ambassador and potentially other individuals and entities involved with the alleged fraudulent and/or other harmful activity that has and/or may cause damages and loss to the Company and its Segregated Portfolios, including claims that may be made within and outside of the Cayman Islands.

f) The JVLs will have to seek Chapter 15 recognition in the United States of America, in part, to obtain the stay of proceedings in respect of the present and potential future litigation proceedings to further ensure the economical and orderly liquidation of the Company and its Segregated Portfolios.

41. The Company is facing imminent filing, discovery and other deadlines in respect of, *inter alia*, the Kentucky Litigation, California Class Action and CIMA's Suspension Notice, and as a result, the JVLs have to seek leave from the Court under sections 224(5) and 225(2) of the Companies Act and a supervision order under section 131 of the Companies Act on an urgent basis.

**CONSENT TO APPOINTMENT AND QUALIFICATIONS AS JOINT OFFICIAL LIQUIDATORS**

42. Kenneth M. Krys and Neil S. Dempsey:

    a) Are qualified insolvency practitioners as that term is defined in section 89 of the Companies Act and in accordance with Regulation 4 of the Insolvency Practitioner's Regulations 2018 (as amended) (the "**Regulations**");
    b) Are resident in the Cayman Islands and therefore meet the residency requirements contained in Regulation 5 of the Regulations;
    c) Meet the independence requirements prescribed by Regulation 6 of the Regulations;
    d) Meet the insurance requirements in accordance with Regulation 7 of the Regulations; and
    e) Consent to their appointment to act as a joint official liquidators of the Company.

**YOUR PETITIONERS THEREFORE HUMBLY PRAY THAT:**

43. Leave be granted in respect of the Shareholder Resolution and Directors' Resolution giving effect to the voluntary winding up of the Company and the appointment of Kenneth M. Krys and Neil S. Dempsey of KRyS Global as JVLs of the Company pursuant to sections 224(5) and 225(2) of the Companies Act.

44. All acts of Kenneth M. Krys and Neil S. Dempsey acting in their capacity as JVLs prior to the Court granting leave pursuant to sections 224(5) and 225(2) of the Companies Act be confirmed.

45. The liquidation of the Company be continued under the supervision of the Court pursuant to section 131 of the Companies Act.

46. Kenneth M. Krys and Neil S. Dempsey of KRyS Global, 23 Lime Tree Bay Avenue Governors Square, Building 3, Ground Floor, PO Box 31237, KY1-1205, Grand Cayman, Cayman Islands be appointed as joint official liquidators of the Company (the "**JOLs**").

47. The JOLs have the power to act jointly and severally.

48. The JOLs shall not be required to give security for their appointment.

49. The JOLs be authorised to take steps as necessary or desirable to take possession, custody and control of the assets, books and records of the Company and its Segregated Portfolios.

50. The JOLs be authorised to take any such action as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment and/or powers in any other relevant jurisdiction, including, without limitation the United States of America, and to make application to the courts of such jurisdictions for that purpose.

51. The JOLs be authorised as representatives of the Company to seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JOLs may consider appropriate.

52. The Court requests that all courts of competent jurisdiction outside of the Cayman Islands lend their aid and assistance to this Court and the JOLs in the efforts to achieve an orderly liquidation of the Company and its Segregated Portfolios.

53. In addition to the powers prescribed in Part II of Schedule 3 of the Companies Act which are exercisable without sanction of the Court, the JOLs be authorised pursuant to section 110(2)(a) of the Companies Act to exercise any of the following powers specified in Part I of Schedule 3 to the Companies Act, within and outside of the Cayman Islands, without further sanction of the Court:

   a) The power to bring or defend any action or other legal proceeding in the name and on behalf of the Company and its Segregated Portfolios;

   b) The power to engage attorneys and other professionally qualified persons, based within the Cayman Islands, United States of America and in any other jurisdiction, to assist them in the performance of their functions, including without limitation, the FTI Receivers, Kynect or any other attorney or professional qualified persons already engaged by the Company and its Segregated Portfolios.

   c) The power to carry on the business of the company so far as may be necessary for its beneficial winding up including the novation of the business and assets of the Segregated Portfolios;

d)    The power to engage staff (whether or not as employees of the Company) and/or agents within the Cayman Islands, the United States of America and elsewhere to assist them in the performance of their functions contemplated by this Order, which they are unable to do themselves or which can be more conveniently done by an agent.

e)    The power to dispose of any property of the company to a person who is or was related to the Company and its Segregated Portfolios;

f)    The power to pay any class of creditors in full;

g)    The power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the Company or its Segregated Portfolios, or for which the Company or its Segregated Portfolios may be rendered liable;

h)    The power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the Company or its Segregated Portfolios and a contributory or alleged contributory or other debtor or person apprehending liability of the Company or its Segregated Portfolios;

i)    The power to deal with all questions in any way relating to or affecting the assets or the winding up of the Company or its Segregated Portfolios, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it;

j)    The power to sell any of the Company's property or any of the property of the Segregated Portfolios by public auction or private contract with the power to transfer the whole of it to any person or to sell the same in parcels.

54.    The JOLs' remuneration and expenses be paid out of the general assets of the Company, or if such general assets are insufficient, out of the segregated portfolio assets of each of the Segregated Portfolios in accordance with section 109 of the Companies Act, the Insolvency Practitioner's Regulations 2018 (as amended) and the Companies Winding Up Rules.

55. The JOLs be at liberty to meet all disbursements reasonably incurred in the performance of their duties out of the assets of the Company and its Segregated Portfolios as expenses of the winding up.

56. The JOLs be at liberty to and do pay their agents, employees, attorneys, solicitors and whomever else they may employ or instruct, remuneration and costs, and for the avoidance of doubt, all such payments shall be made as and when they fall due out of the assets of the Company and its Segregated Portfolios as expenses of the winding up.

57. No suit, action or other proceedings shall be proceeded with or commenced against the Company except with leave of the Court pursuant to section 97 of the Companies Act.

58. No disposition of the Company's property or the segregated property of the Segregated Portfolios by or with the authority of the JOLs in carrying out their duties and functions and the exercise of their powers shall be avoided by virtue of section 99 of the Companies Act.

59. The Court give directions as to the following:

    a) The establishment of a liquidation committee at all and/or in respect of the Company and each of the Segregated Portfolios;

    b) Whether separate meetings of creditors/contributories and liquidation committee meetings should be established in respect of the Company and each of the Segregated Portfolios; and

    c) The basis upon which the JOLs remuneration and expenses should be apportioned between the Company and the Segregated Portfolios.

60. The JOLs shall have liberty to apply for further directions relating to the winding up of the Company and the Segregated Portfolios.

61. The Petitioners' costs of and incidental to the Petition be paid from the general assets of the Company, or if such general assets are insufficient, out of the segregated portfolio assets of each of the Segregated Portfolios as an expense of the winding up.

62. Such further or other orders or directions as the Court deems appropriate.

AND your Petitioners will ever pray.

DATED 17 March 2021

*HSM CHAMBERS* (signature)

**HSM CHAMBERS**
Attorneys for the Petitioners

THIS PETITION was presented by HSM Chambers, attorneys for the Petitioners, whose address for service is 68 Fort Street, PO Box 31726, George Town, Grand Cayman, KY1-1207, Cayman Islands (Ref: 509403.0001/ADC).

15