# EXHIBIT 8

1
2
3
4
5
6
7
8
9
10

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| DEL OBISPO YOUTH BASEBALL, INC. d/b/a DANA POINT YOUTH BASEBALL, individually and on behalf of all other similarly situated individuals and entities, | Case No.: 8:21-cv-00199-SPG-DFM<br><br>Hon. Sherilyn Peace Garnetta<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| Plaintiff, | |
| v. | |
| THE AMBASSADOR GROUP LLC d/b/a AMBASSADOR CAPTIVE SOLUTIONS; PERFORMANCE INSURANCE COMPANY SPC; BRANDON WHITE; GOLDENSTAR SPECIALTY INSURANCE, LLC; DOMINIC CYRIL GAGLIARDI and DOES 1 through 50, | |
| Defendants. | |

## I. INTRODUCTION

This matter came on before the Honorable Sherilyn Peace Garnetta on Plaintiff's Motion for Class Certification. The Court has considered the parties' briefing, supporting documents, and oral argument. For the reasons stated below, the Court GRANTS Plaintiff's motion.

## II. BACKGROUND

Plaintiff asserts this class action individually and on behalf of all other similarly situated individuals and entities against Defendants for their involvement in a scheme to defraud Plaintiff and class members by selling counterfeited and nonexistent insurance policies, which purport to provide general commercial, accident, directors' and officers', auto and other types of insurance to Plaintiff and class members, which primarily include youth sports teams, leagues, and athletes throughout the United States.

This class action seeks damages and equitable relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and various state and common law claims.

Plaintiff Dana Point Youth Baseball ("DPYB") is a nonprofit organization that has provided the means for community youth in South Orange County to develop qualities and attributes through baseball since 1968. DPYB is a member of the larger PONY Baseball, Inc. nonprofit organization ("PONY National"). PONY National stands for Protect Our Nation's Youth.

Plaintiff alleges that Defendants are part of a nationwide, association-in-fact enterprise that has existed and operated for at least the last ten years. The purpose and actions of the enterprise was the misappropriation and/or theft of premium dollars from youth sports teams, leagues, and athletes throughout the United States by selling counterfeited and nonexistent "insurance policies" (the "Counterfeited Policies"), which purport to provide accident, health, and other insurance primarily to these youth sports

| [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION | Case No.: 8:21-cv-00199-SPG-DFM |
|---|---|

1

teams, leagues, and athletes (the "Scheme"). The "Counterfeited Policies" include all counterfeited and nonexistent "insurance policies" sold to Plaintiff and class members.

The Scheme involved supposed accident and health insurance policies that purport to insure hundreds (and maybe thousands) of sports teams and leagues throughout the United States, and an exponentially larger number of individual athletes. Some of the Counterfeited Policies are for combat sports and football and have million-dollar limits for certain brain injuries.

The claims and conduct at issue arise from insurance policies sold by Gagliardi Insurance Services, Inc. ("Gagliardi"). Defendants were all officers, board members, or contractors of Gagliardi. Specifically, Defendant Marco Solomon Gagliardi ("M. Gagliardi") was the Chief Executive Officer of Gagliardi during the relevant period and Defendant Dominic Cyril Gagliardi ("D. Gagliardi") was Gagliardi's President from incorporation until 2017, Chairman from incorporation until 2018, and Director from 2019 to 2020. Defendant Brandon White ("White") was the founder, owner, and President of The Ambassador Group LLC ("Ambassador").

The Scheme relates to an area of insurance known as "captive reinsurance," which involves complex multi-party arrangements. In the type of captive reinsurance program at issue here, Gagliardi—which was not licensed to issue insurance policies—purportedly sought (with the help of Ambassador) to engage an insurance company (an "Issuing Carrier")—such as AIG, which is so licensed and has the financial capacity to underwrite such policies—to issue policies which would then be resold by Defendants. Defendants, however, failed to engage an Issuing Carrier and falsely represented to class members and the public that the policies sold under their captive reinsurance program (the "Captive Program") were backed by Issuing Carriers, authorized to write insurance policies.

Plaintiff, Del Obispo Youth Baseball, Inc. ("Plaintiff" or "DPYB") and all class members purchased insurance policies (the "Counterfeited Policies") under the Captive

| [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION | Case No.: 8:21-cv-00199-SPG-DFM |
|---|---|

2

Program. Plaintiff and class members all received the same representation that the Counterfeited Policies were valid and backed by an Issuing Carrier.

Ultimately, in October of 2020, various Defendants announced to the public that the insurance policies sold under the Captive Program were the subject of a federal lawsuit by several Issuing Carriers due to Defendants' unauthorized use of the Issuing Carriers' marks with respect to the Captive Program. These Defendants also posted on their website that no Issuing Carrier ever backed the Counterfeited Policies and that those policies were, in fact non-existent.

Plaintiff and class members did not discover that they were defrauded until after substantial premium payments had been made.

## III. ANALYSIS

To certify a class action under Rule 23, Plaintiff must first establish each of the following: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. United Steel, Paper & Forestry v. ConocoPhillips, 593 F.3d 802, 806 (9th Cir. 2010).

Once these prerequisites are met, Plaintiff must demonstrate satisfaction of Rule 23(b)(3)'s predominance and superiority requirements to obtain monetary relief. The Court must conduct a "rigorous analysis," Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011), but has "no license to engage in free-ranging merits inquiries at the certification stage." Amgen Inc. v. Conn. Ret. Plans & Trust, 568 U.S. 455, 466 (2013).

### A. The Rule 23(a) requirements are satisfied.

#### 1. Numerosity is met.

Over a hundred Counterfeited Policies were sold nationwide and to California residents. Therefore, the numerosity requirement of Rule 23(a)(1) is satisfied for both classes.

#### 2. Commonality is met.

Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P.

[PROPOSED] ORDER GRANTING  Case No.: 8:21-cv-00199-SPG-DFM
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

3

23(a)(2). Commonality requires that "class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks and citation omitted). Commonality does not mean that every class member's claims must stem from identical factual circumstances. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Dukes*, 564 U.S. 338 ("The existence of shared legal issues with divergent factual predicates is sufficient [for commonality], as is a common core of salient facts coupled with disparate legal remedies within the class."). Courts construe commonality "permissively and [a]ll questions of fact and law need not be common." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (internal quotation marks and citation omitted); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009) (holding "common" does not mean "complete congruence") (internal quotation marks and citation omitted).

Here, common issues of law and fact include, among others, the following: (1) whether Defendants violated the federal RICO statute, by engaging in a pattern of fraud in connection with the sale of the Counterfeited Policies, including (a) whether Defendants committed one or more instances of mail fraud within the meaning of 18 U.S.C. §1961(1)(B), 18 U.S.C. §1341, (b) whether Defendants committed one or more instances of wire fraud within the meaning of 18 U.S.C. §1961(1)(B) and 18 U.S.C. §1343, and whether Defendants committed one or more instances of trafficking in counterfeit goods or services within the meaning of 18 U.S.C.A. § 2320; (2) whether Defendants had a legal duty to ensure that the information that Defendants disseminated to members of the Classes was not materially inaccurate or misleading; (3) whether documents and statements publicly disseminated by Defendants relating to their fraudulent "insurance" policies contained materially false and misleading statements and representations, and/or omitted to state material facts necessary to make the statements made not false and misleading; (4) whether Defendants acted willfully, recklessly, or negligently in disseminating materially false or misleading information, or omitting to

state and/or in misrepresenting material facts, in connection with the sale of their fraudulent "insurance policies"; (5) whether Defendants' conduct, including its failure to act, resulted in or was the cause-in-fact or proximate cause of Plaintiff's and members of the Classes' damages; (6) whether Plaintiff and members of the Classes have sustained damages by reason of Defendants' misrepresentations and omissions, and the pattern of fraudulent behavior complained of herein and, if so, the proper measure of such damages; and (7) whether Plaintiff and members of the Classes are entitled to relief, including equitable relief.

### 3. Plaintiff satisfies typicality.

Rule 23(a)(3) requires that the proposed Class Representatives claims be typical. The Court considers "whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). Typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (internal quotation marks and citation omitted).

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez, supra*, 591 F.3d at 1124 (internal quotation marks and citation omitted).

Plaintiff's claims are typical: Plaintiff was subjected to the same deceptive conduct and omissions by Defendants and received the same or similar misrepresentations. Plaintiff and class members are pursuing the same legal theories and have all been injured by Defendants' conduct because of the misrepresentations regarding the Counterfeited Policies.

### 4. Adequacy is met.

The adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Id.* In considering the adequacy of plaintiff's counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff has already shown that it will vigorously pursue these claims on behalf of class members. It has produced documents, aided in discovery, assisted counsel in exchanges with opposing counsel, and closely followed the case. Because Plaintiff, like every class member, purchased a Counterfeited Policy, Plaintiff has no conflicts with other members of the classes. Plaintiff has retained counsel with substantial experience litigating lawsuits like this one. Plaintiff's counsel has devoted a significant amount of time to this case and will continue to commit the resources necessary to represent the class. Accordingly, Plaintiff and its counsel have demonstrated their commitment to prosecuting this case on behalf of all class members.

### B. Plaintiff satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied.

### 1. Common issues of law and fact predominate.

Federal Rule of Civil Procedure 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amgen*, *supra*, 568 U.S. at 459 (internal quotation marks and citation omitted). "Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Id*. at 469 (internal quotation marks and citation omitted). Rather, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, *supra*, 150 F.3d at 1022 (internal quotation marks and citation omitted).

Here, predominating common questions include whether Defendants represented that the Counterfeited Policies were backed by an Issuing Carrier, when, in fact, they were not; whether this misrepresentation was willful, reckless, or negligent, and whether this misrepresentation caused Plaintiff and class members damages.

Here, common facts are also numerous. The Counterfeited Policies sold under the Captive Program were all purportedly backed by, at most, three Issuing Carriers. None of the Counterfeited Policies was backed by an Issuing Carrier. Plaintiff and class members all received the same misrepresentation: that the Counterfeited Policies were valid and backed by an Issuing Carrier. Plaintiff and all class members paid premiums for the Counterfeited Policies. Neither Plaintiff nor any class member was aware that the

Counterfeited Policies were not backed by an Issuing Carrier until Defendants announced such in October of 2020.

> a. Common issues predominate for the Racketeer Influenced and Corrupt Organizations Act claim.

To state a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's "business or property." 18 U.S.C. § 1964(c); *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001). Here, all five elements depend almost entirely on Defendants' conduct in effectuating the Scheme and accordingly can be established by class-wide proof.

Similarly, the predicate acts asserted under the RICO claim can be established by class-wide proof. The elements of mail and wire fraud are: (1) proof of a scheme or artifice to defraud, and (2) using or causing the use of the mails or wires in order to further the fraudulent scheme. 18 U.S.C. § 1341; 18 U.S.C. § 1343; *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003). The elements of the offense of trafficking in counterfeit goods or services are that the defendant: (1) trafficked in goods or services; (2) intentionally; (3) used a "counterfeit mark" on or in connection with these goods or services; and (4) knew the mark was counterfeit. 18 U.S.C. § 2320; *Wang v. Rodriguez*, 830 F.3d 958, 961 (9th Cir. 2016). Again, all the elements of the predicate acts relate to Defendants' conduct in effectuating the Scheme and can be proven with class-wide proof.

> b. Common issues predominate for Conversion

The elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010). Here, class members, by virtue of the class definition ("purchasers of an insurance policy bounded by Gagliardi Insurance Services, Inc." (SAC at ¶ 82)) were all the rightful owners of their money before they passed it on

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Case No.: 8:21-cv-00199-SPG-DFM

8

to Defendants. Whether Defendants than converted those monies and damaged class members depends almost entirely on Defendants' conduct in effectuating the Scheme and can thus be proven with class-wide evidence.

   c. <u>Common issues predominate for Unjust Enrichment</u>

Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Baggett v. Hewlett-Packard Co*., 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007). Again, by virtue of the Scheme and the class definition ("purchasers of an insurance policy bounded by Gagliardi Insurance Services, Inc." (SAC at ¶ 82)), all class members conferred a benefit on Defendants. A determination of whether Defendants' retention of that benefit is unjust or was at the expense of class members will depend almost entirely upon whether Defendants' misrepresented that the Captive Program was backed by an Issuing Carrier. Accordingly, the unjust enrichment claim can be resolved for all members of the class in a single adjudication.

   d. <u>Common issues predominate for the California's Unfair Competition Claim.</u>

The California Unfair Competition Law ("UCL") prohibits unlawful, unfair and fraudulent business practices. Cal. Bus. & Prof. Code § 17200. Plaintiff contends that Defendants violated the unlawful and unfair prongs of the UCL. Plaintiff's claim under the unlawful prong of the UCL is based on violations of the RICO Act (*supra* Section III.B.1.a), conversion (*supra* Section III.B.1.b ), violations of the CLRA (*infra below*), and fraud (*infra below*) and will be proven with the same common evidence. Plaintiff can show that Defendants' conduct was unfair by proving that "the utility of the defendant's conduct" outweighs "the gravity of the harm" to class members, which will require examining the impact on class members "balanced against the reasons, justification, and motives" of Defendants. *Perryman v. Litton Loan Serv., LP*, 81 F. Supp. 3d 893, 899 (N.D. Cal. 2015) (citations omitted). This balancing test focuses on Defendants' conduct

and therefore raises common issues. *See Gaudin v. Saxon Mortg. Serv., Inc.*, 297 F.R.D. 417, 430 (N.D. Cal. 2013).

Plaintiff will not have to present "individualized proof of deception, reliance and injury" to prove their UCL claim. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009)). Plaintiff need only "show that members of the public are likely to be deceived" by Defendants' conduct. *Id.* at 985-86 ("[I]n effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury."). Under the UCL, Plaintiff can prove reliance by demonstrating the materiality of Defendants' misrepresentation and omission. *Gold v. Lumber Liquidators, Inc.*, No. 3:14-cv-05373-TEH, 2015 WL 7888906, at *7, 9 (N.D. Cal. Nov. 30, 2015) ("It seems difficult to argue that a reasonable consumer would not find the alleged misrepresentations and omissions to be important to the purchasing decision at issue.") (citing *Tobacco*, 46 Cal. 4th at 326-27). Materiality is evaluated using an objective, reasonable person standard, and will turn on common evidence. *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011).

*CLRA*

Similarly, the California Consumers Legal Remedies Act (CLRA) prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The statute provides relief to "any consumer who suffers any damages as a result of the use or employment" of any unlawful "method, act, or practice declared to be unlawful by [the CLRA]." Cal. Civ. Code § 1780(a). A plaintiff pursuing a CLRA claim must "show not only that the defendant's conduct was deceptive but that the deception caused them harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009). Whether Defendants' conduct was deceptive is an issue common to all class members. An omission is actionable under the CLRA "when the omission is contrary to a

representation actually made by the defendant or where a duty to disclose exists." *Gold v. Lumber Liquidators, Inc.*, No. 3:14-cv-05373-TEH, 2015 WL 7888906, at *7 (N.D. Cal. Nov. 30, 2015) (citation omitted). A duty to disclose exists when a defendant "has exclusive knowledge of material facts not known to the plaintiff." *Norcia v. Samsung Telecomm. Am., LLC*, No. 14-cv-00582-JD, 2015 WL 4967247, at *6 (N.D. Cal. Aug. 20, 2015) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Plaintiff will use common evidence to prove that Defendants' exclusively knew and did not disclose that the Captive Program was not backed by an Issuing Carrier, and that this omission was contrary to their representations.

Plaintiff will also use common evidence to prove causation, which can be established on a classwide basis by proving the materiality of the represented or omitted information. *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 183-84 (2010). An omission is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010) (citation omitted); *Gold*, 2015 WL 7888906, at *9; *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 531 (C.D. Cal. June 12, 2012) (plaintiffs could show an omission was material by demonstrating that the alleged defect was likely to manifest in premature tire wear in class members' vehicles). Materiality is evaluated using an objective, reasonable person standard, and will turn on common evidence. *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015).

*Fraud*

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974,

(Cal. 1997). Here, every element, excepting justifiable reliance, relates to Defendants' systematic conduct in effectuating the Scheme and can thus be established by common proof. Further, justifiable reliance can be proven by common proof as "it is not necessary to show reliance upon false representations by direct evidence" in California. *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 (1971). "'The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.'" *Id.* (quoting *Hunter v. McKenzie* 197 Cal. 176, 185 (1925)). Here, the fact that Defendant sold non-existent insurance policies and only Defendants were aware of the true nature of these Counterfeited Policies, affords sufficient evidence that class members seeking insurance coverage all relied, and justifiably so on Defendants' misrepresentations as to those policies.

*Damages/Restitution*

Plaintiff seeks classwide restitution for the California class. Cal. Bus. & Prof. Code § 17203. Plaintiff contends that class members are entitled to restitution of the full purchase price because coverage under the Counterfeited Policies was, in fact, non-existent. *See Pulaski*, 802 F.3d at 989 ("restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information"). Class members' entitlement to restitution is a common issue. *Id.* at 986 ("[A] court need not make individual determinations regarding entitlement to restitution" because "restitution is available on a classwide basis once the class representative makes the threshold showing of liability under the UCL.").

   e. <u>Common Issues Predominate for Negligence</u>

"The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance

Case No.: 8:21-cv-00199-SPG-DFM

12

on the misrepresentation, and (5) resulting damage." *Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014).

Here, every element, excepting justifiable reliance, depends entirely on Defendants' systematic conduct in effectuating the Scheme and can thus be proven by classwide evidence. Further, justifiable reliance can be proven by common proof and inferred from the surrounding facts of the transactions at issue. *Vasquez*, 4 Cal. 3d at 814; *supra* Section III.B.1.d (Fraud).

2. <u>Class certification is superior to individual actions.</u>

The purpose of the superiority requirement is to ensure judicial economy and that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). Courts consider four factors in evaluating the superiority requirement: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). All of these factors support class certification. The high cost of pursuing claims against Defendants, including significant discovery and motions practice, outweighs the potential recovery for class members. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). It is also "far more efficient" to litigate Plaintiff's claims based on a common misrepresentation and omission "on a classwide basis rather than in thousands of individual and overlapping suits." *Id.* at 1176; *see also Bibo v. Fed. Express, Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *9 (N.D. Cal. Apr. 21, 2009) ("avoiding repetitious suits before the courts of this state is a valid factor weighing toward class treatment of the claims"). Given the large number of class

members, the high cost of individual proof, and the common issues at the heart of the claims, the class action device is the superior method for adjudicating these claims.

## IV. ORDER

The Court GRANTS Plaintiff's motion and certifies the following classes:

<u>National Class</u>: All purchasers of an insurance policy bounded by Gagliardi Insurance Services, Inc. that made such purchase in the United States on or after January 1, 2011 (the "Class Period").

<u>California Class</u>: All purchasers of an insurance policy bounded by Gagliardi Insurance Services, Inc. that made such purchase in the State of California on or after January 1, 2011 (the "Class Period").

Excluded are Defendants, their legal representatives, assigns and successors, and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Plaintiff Del Obispo Youth Baseball, Inc. is appointed to serve as class representatives.

The law firms of Morgan & Morgan and Nelson & Fraenkel LLP are appointed to serve as co-lead counsel for the class. Plaintiff is directed to submit a proposed notice plan and form of notice within thirty days of entry of this Order.

**IT IS SO ORDERED**

Dated: _____                    _____
                                         Hon. Sherilyn Peace Garnett
                                         U.S. Court District Judge