Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6923

Gretchen M. Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
NELSON & FRAENKEL LLP
601 S. Figueroa Street., Suite 2050
Los Angeles, California, 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

*Attorneys for Plaintiff and Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEL OBISPO YOUTH BASEBALL, INC. d/b/a DANA POINT YOUTH BASEBALL, individually and on behalf of all other similarly situated individuals and entities,<br><br>        Plaintiff,<br><br>v.<br><br>THE AMBASSADOR GROUP LLC d/b/a AMBASSADOR CAPTIVE SOLUTIONS; et al.,<br><br>        Defendants. | Case No.: 8:21-cv-00199-SPG-DFM<br><br>Hon. Sherilyn Peace Garnett<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: December 18, 2024<br>TIME: 1:30 PM<br>LOCATION: First Street Courthouse, 350 West 1st Street, Courtroom 5C<br><br>Complaint Filed: January 28, 2021 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on December 18th, 2024, at 1:30 PM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Sherilyn Peace Garnett, located at U.S. District Court, First Street Courthouse, 350 West 1st Street, Courtroom 5C, Los Angeles, CA 90012, Plaintiff will and hereby does move for an order granting final approval of the amended class action settlement (the "Amended Settlement").

This motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Michael F. Ram ("Ram Decl."), the Declaration of Kusay Ghenniwa ("CPT Decl.") the records and file in this action, and on such other matter and oral argument as may be presented before or at the hearing of the motion.

This motion seeks final approval of the Amended Settlement which was preliminarily approved by this Court in its Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ("Preliminary Approval Order")(ECF No. 144).

The Parties have agreed on the filing of this motion.

Respectfully Submitted,

Dated: September 9, 2024        By:        */s/ Michael F. Ram*
                                                    Michael F. Ram

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6923

1

Gretchen M. Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
NELSON & FRAENKEL LLP
601 S. Figueroa Street., Suite 2050
Los Angeles, California, 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

*Attorneys for Plaintiff and Proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

2

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 3

    A.   PLAINTIFF'S CLAIMS ......................................................................... 3

    B.   ADDITIONAL ACTIONS AGAINST DEFENDANTS AND RESULTING BANKRUPTCIES....... 4

    C.   PLAINTIFF ENGAGED IN EXTENSIVE LITIGATION............................................. 5

    D.   THE PARTIES MEDIATED THE BEST RESOLUTION POSSIBLE IN LIGHT OF THE SETTLING DEFENDANTS' LIMITED ASSETS .................................................................. 5

    E.   SETTLEMENT TERMS ......................................................................... 6

        1. The Proposed Settlement Class ................................................... 7

        2. The Relief to Settlement Class Members ...................................... 7

        3. The Proposed Release ................................................................ 8

        4. The Proposed Settlement Administrator ...................................... 9

        5. CAFA Notice............................................................................... 9

III.  STATEMENT OF ISSUES ........................................................................... 9

IV.   AUTHORITY AND ARGUMENT............................................................... 9

    A.   THE COURT PROPERLY CERTIFIED THE PROPOSED SETTLEMENT CLASS..................... 9

    1. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A). ............... 10

    2. THE AMENDED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(3)........................................................................................ 11

        a)    Common questions predominate over any individual issues. ........................ 11

        b)    A class action is superior to other available methods of adjudication. .......... 12

    B.   THE SETTLEMENT SHOULD BE FINALLY APPROVED. ................................................. 13

    C.   THE NOTICE PLAN MET THE REQUIREMENTS OF DUE PROCESS ................................. 15

V.    CONCLUSION............................................................................................. 16

i

# TABLE OF AUTHORITIES

**Cases**

*Bibo v. Fed. Express, Inc.*,
  No. C 07-2505 TEH, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009) ............................ 13

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ........................................................................ 12

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .....................................................................9, 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 11

*Lexington Ins. Co. v. The Ambassador Group LLC*,
  No. 3:20-cv-00330-BJB-LLK (W.D. Ky. May 11, 2020) ...................................4

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ...................................................................................... 15

*Rannis v. Recchia*,
  380 F. App'x 646, 651 (9th Cir. 2010) .......................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .................................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 10

*Wolin v. Jaguar Land Rover North America, LLC*,
  617 F.3d at 1175 (9th Cir. 2010) .............................................................12, 13

1

**Statutes**

2

3

Class Action Fairness Act,
28 U.S.C. § 1332(d) ...........................................................................................9

4

5

Class Action Fairness Act,
28 U.S.C. § 1715 ...........................................................................................15

6

7

Class Action Fairness Act,
28 U.S.C. § 1715(b) ........................................................................................9

8

9

Conversion, Unjust Enrichment, violations of California's Unfair Competition Law, Cal.
Bus. & Prof. Code § 17200 *et seq*.................................................................4

10

Racketeer Influenced and Corrupt Organizations Act,
18 U.S.C. § 1961 *et seq*...............................................................................4

11

12

13

**Other Authorities**

14

1 Newberg on Class Actions § 3:24 (5th ed.) ......................................................12

15

Ann. Manual Complex Litig. § 21.632 (4th ed.) ...................................................9

16

17

**Rules**

18

Fed. R. Civ. P. 23 ..............................................................................................10

19

20

Fed. R. Civ. P. 23(a) ...........................................................................................9

21

Fed. R. Civ. P. 23(a)(3) .....................................................................................10

22

Fed. R. Civ. P. 23(a)(4) .....................................................................................10

23

24

Fed. R. Civ. P. 23(b)(1) .....................................................................................11

25

Fed. R. Civ. P. 23(b)(2) .....................................................................................11

26

Fed. R. Civ. P. 23(b)(3)..........................................................................9, 11, 13, 15

27

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................15

PLAINTIFF'S MOTION FOR FINAL          No. 8:21-CV-00199-SPG-DFM
APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Del Obispo Youth Baseball, Inc. d/b/a Dana Point Youth Baseball ("DPYB") respectfully submits this memorandum of points and authorities in support of its Motion for Final Approval of an Amended Class Action Settlement (the "Amended Settlement") between Plaintiff and Defendants, The Ambassador Group LLC d/b/a Ambassador Captive Solutions ("The Ambassador Group") and Brandon White ("White") (collectively, "Ambassador" or the "Settling Defendants") (and with Plaintiff collectively the "Parties").

## I.  INTRODUCTION

DPYB seeks final approval of an Amended Settlement ("Settlement"),[1] between the Parties that was achieved following the entry of this Court's Order Granting, in Part, and Denying, in Part, Plaintiff's Motion for Preliminary Approval of Class Action Settlement. ECF No. 124.  In the Order, the Court granted Plaintiff's request to certify a settlement class. The Court initially declined preliminary approval of the prior settlement ("First Settlement"). However, Plaintiff's Second Motion for Preliminary Approval ("Motion") (ECF No. 138.) and Third Amended Complaint ("TAC") (ECF No. 132), addressed several deficiencies and the Court granted Plaintiff's Motion for Preliminary Approval. ECF No. 144 ("Preliminary Approval Order").

Since the Preliminary Approval Order, Plaintiff has worked diligently to implement the directives of the Court. Plaintiff has collaborated with CPT Group, Inc. ("CPT") and the Pony National Umbrella Organization ("PONY") to assemble a class list of 274 class members. *See* Declaration of Kusay Ghenniwa on Behalf of Settlement Administrator Regarding Mailing of Settlement Notice ("CPT Decl."), ¶¶ 4-13. To create the class list, Plaintiff provided CPT with a an excel spreadsheet from Defendant Dominic Gagliardi purporting to be the "Total Premiums Paid" by various entities for a 6-month period in 2020. *Id.* ¶ 4.  It covered a smaller time frame than defined by the class period and was

---

[1] A copy of the Amended Settlement ("Settlement Agreement") has been filed with the Court as ECF No. 138-3.

PLAINTIFF'S MOTION FOR FINAL                    No. 8:21-CV-00199-SPG-DFM
APPROVAL OF CLASS ACTION SETTLEMENT

overbroad in that it was not limited to only members of PONY National. There were 1,842 records in total on the list, and after removing duplicates, 1,130 unique organizations. *Id.* ¶ 4. PONY then sent CPT a list of 44 members who had identified themselves as having Gagliardi insurance. *Id.* ¶ 7. CPT then sent the newest list to Class Counsel who removed 250 records that were unrelated to baseball. *Id,* ¶ 8 CPT then sent the list to PONY who removed 641 records that were not PONY leagues. *Id,* ¶ 8. CPT then proceeded with a final analysis and scrub of the data that included combining the records identified as PONY leagues with the initial qualifying records provided from PONY in July 2024. *Id,* ¶ 11. The final combined list contained 230 unique organizations from the premiums paid list and 44 organizations from PONY's database for a combined total of 274 organizations. *Id.*

After compiling the complete list of class members and their addresses, Plaintiff, Defendants, and CPT worked to effectuate notice on all class members. On September 9, 2024, the Notice Packets were enclosed in envelopes with the names and known addresses printed on them and mailed via U.S. first class mail to all 274 organizations in the final class list. *Id.* ¶ 19. Opt-outs and objections are due November 8, 2024, and Plaintiff and CPT will inform the Court regarding any opt-outs and objections in a report to be filed before the final approval hearing. *Id.* ¶¶ 20-21.

In the notices sent to the class members, CPT listed the amount of the premium paid based on the information currently available. *See id.* ¶¶ 14-15. Class members may then submit additional information concerning the amount of their premiums paid. *Id.* Based on this information, CPT will calculate the pro rata amount for each class member and send the corresponding payment amount. *Id.* If the Court awards the requested fee, the average class member payment will be $401.45.

Plaintiff respectfully submits that the Settlement merits final approval. The amount of the Settlement was negotiated at arm's-length before an experienced mediator after the parties completed substantial discovery and submitted various motions—including a

PLAINTIFF'S MOTION FOR FINAL                     No. 8:21-CV-00199-SPG-DFM
APPROVAL OF CLASS ACTION SETTLEMENT

motion for class certification. The settlement amount is essentially all that remains on a wasting insurance policy. *See* Preliminary Approval Order, 21-22 ("[T]he Settlement is fair in light of the unique circumstances posed by Settling Defendants' limited financial resources."). The amount is the best that can be achieved given the financial condition of the Settling Defendants. *Id.* Ongoing litigation would only further diminish the insurance and risk an outcome that would provide no monetary benefit. *Id.* This resolution ensures that Settlement Class Members will receive some compensation and eliminates the risk of trial, appeal, and collecting a judgment from the financially challenged Settling Defendants.

## II. STATEMENT OF FACTS

### A.    Plaintiff's claims

Plaintiff filed this lawsuit on January 28, 2021. In the operative Third Amended Complaint ("TAC") (ECF No. 132), Plaintiff alleges that Defendants engaged in a scheme (the "Scheme") to defraud Plaintiff and class members by selling nonexistent insurance policies to Plaintiff and class members, primarily youth sports teams, leagues, sports equipment manufacturers, and athletes throughout the United States (the "Policies"). TAC ¶ 1.

The TAC further alleges that the Defendants, as part of a scheme, and with Gagliardi Insurance Services acting as broker, sold the Policies. *Id.* ¶¶ 18-20, 38-46. Defendants were also interrelated entities, with some of the same officers, board members, or contractors. *See id.* ¶¶ 38-46. Specifically, Defendant Marco Solomon Gagliardi ("M. Gagliardi") was the Chief Executive Officer of Gagliardi. *Id.* ¶ 23. Defendant Domenico Gagliardi was Gagliardi's President from incorporation until 2017, Chairman from incorporation until 2018, and Director from 2019 to 2020. *Id.* ¶ 22.

The Ambassador Group was Gagliardi's captive consultant and contracted to assist Gagliardi in forming its Captive Program (the "Captive Services Agreement"). *Id.* ¶ 45. Defendant Brandon White was the founder, owner, and President of The Ambassador

3

Group. *See id.* ¶¶ 38-40. Under the Captive Services Agreement, Ambassador was obligated to set up Gagliardi's Captive Program and, specifically, to engage an Issuing Carrier (such as American International Group "AIG") to back what would become the non-existent Policies sold under the Captive Program. *Id.* ¶ 48. Performance and Goldenstar allegedly helped effectuate the Captive Program. *See id.* ¶ 45.

Ambassador allegedly distributed to Gagliardi and others what are now alleged to be forged reinsurance agreements purporting to show that issuing carriers agreed to back Gagliardi's Captive Program. *Id.* ¶ 49. However, in 2020, the public became aware that no such issuing carrier was engaged and that the policies at issue were not backed by any insurance carrier. *See id.* ¶¶ 72-74.

Plaintiff filed this Action alleging that Defendants are part of a nationwide, association-in-fact enterprise, the purpose and action of which was the misappropriation and/or theft of premium dollars by selling the Policies. *Id.* ¶ 18. Plaintiff sought relief against Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act pursuant to 18 U.S.C. § 1961 *et seq.*, conversion, unjust enrichment, violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and negligence.

**B.    Additional Actions Against Defendants and Resulting Bankruptcies**

AIG and certain other insurance carriers filed a lawsuit, on May 11, 2020, against Ambassador and Gagliardi for their unauthorized use of their issuing carriers' marks in enacting the Scheme (the "Issuing Carrier Suit"). *Lexington Ins. Co. v. The Ambassador Group LLC,* No. 3:20-cv-00330-BJB-LLK (W.D. Ky. May 11, 2020), ECF 1.)

Gagliardi, Performance, and Goldenstar underwent bankruptcy or foreign liquidation proceedings and are not currently involved in the litigation. Declaration Of Michael F. Ram In Support Of Motion For Final Approval Of Class Action Settlement ("Ram Decl."), ¶ 2.

Defendants D. Gagliardi and M. Gagliardi failed to respond to the complaint in this

action. They informed Plaintiff that they have limited assets and were considering bankruptcy. Ram Decl. ¶ 3. Plaintiff filed a voluntary dismissal without prejudice for each of the following Defendants: D. Gagliardi, Performance, and Goldenstar. *Id.; see also* ECF No. 128-130.

The Settling Defendants are the only Defendants that have actively participated in the litigation and the only Defendants participating in the Amended Settlement.

### C.    Plaintiff engaged in extensive litigation.

The Parties engaged in extensive discovery over several years. Plaintiff served numerous interrogatories and requests for production on the Settling Defendants and received and reviewed thousands of pages of documents in response. Ram Decl. ¶ 5. Plaintiff had numerous conferences with the Settling Defendants to ensure that Plaintiff received all information to which it was entitled. *Id.*  Plaintiff served subpoenas on the Settling Defendant's financial institutions and reviewed hundreds of pages of responsive documents to confirm that assets and funds obtained through the Scheme were not hidden or funneled to a foreign bank account. *Id.*  Plaintiff reviewed hundreds of pages from the bankruptcy and liquidation proceedings involving Gagliardi, Performance, and Goldenstar. Plaintiff also served subpoenas on Defendant D. Gagliardi and Gagliardi Insurance Service's bankruptcy trustee and reviewed those documents. *Id.*

Plaintiff's counsel researched and drafted the class action complaint, and subsequent amended complaint, and filed a motion for class certification on September 8, 2022. Ram Decl. ¶ 6; ECF No. 98.

### D.    The Parties mediated the best resolution possible in light of the Settling Defendants' limited assets.

In 2022, after Plaintiff was unable to discover assets belonging to the Settling Defendants' sufficient to have a material impact, and after being informed by the Settling Defendants that only $451,000 remained on their $1,000,000 wasting insurance policy, the Parties engaged in mediation in 2022. Ram Decl. ¶ 7. On November 28, 2022, the

Parties mediated before the Honorable Gail Andler (Ret.). *Id*. The negotiations were extensive and at arm's length. *Id.*

Plaintiff evaluated the time and expense to prosecute the case to judgment, the assets of Ambassador, and the uncertainty of the litigation and concluded that it would be in the best interests of the Plaintiff and class to settle. Ram Decl. ¶ 9. After the November 2022 mediation, the Parties continued to work to finalize the terms of the First Settlement, including numerous e-mail exchanges and calls with their respective clients to come to an agreement on the settlement details. Ram Decl. ¶ 11. Plaintiff filed the motion for preliminary approval of the First Settlement on November 28, 2023. ECF No. 120. After a January 10, 2024 hearing on the motion for preliminary approval of the First Settlement, the Court issued its Order granting the motion in part, and denying it in part. ECF No. 124.

In compliance with the Court's Order, Plaintiff filed the TAC and dismissed the three non-settling defendants identified above without prejudice. ECF No. 141-143. The Parties agreed on an Amended Settlement (ECF No. 138-3) which modified substantive provisions to respond to the Court's concerns. Ram Decl., ¶ 13. Plaintiff filed a second motion for preliminary approval (ECF No. 138), which the Court approved. ECF No. 144.

Following the Preliminary Approval Order, Plaintiff worked with CPT and the national PONY umbrella organization to compile a complete list of class members. *See* CPT Decl. ¶¶ 4-13. Using all available data from Defendants, and with the help of PONY, a complete list of 274 class members was compiled. *Id.*  Notice was sent September 9, 2024 via first class mail. *Id.* ¶ 19.  The opt-out and objection period will end on November 8, 2024. *Id.* ¶20. Plaintiff and CPT will provide a report prior to the final approval hearing regarding opt-outs and objections. *Id.* ¶21.

### E.    Settlement Terms

The terms of the Amended Settlement are memorialized in the Amended Class Action Settlement Agreement ("Settlement Agreement"). ECF No. 138-3.

PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

No. 8:21-CV-00199-SPG-DFM

### 1.    The Proposed Settlement Class

The Settlement Class is defined as:

All members of PONY National that purchased a general commercial, accident, directors' and officers', auto, and/or other type of insurance policy bounded by Gagliardi Insurance Services, Inc. and that made such purchase in the United States on or after January 1, 2018 through January 28, 2021 (the "Class Period").[2]

Settlement Agreement ¶ 2.19. This revised Settlement Class addressed several of the Court's concerns following the first motion for preliminary approval. *See* Preliminary Approval Order at 4-5.  Plaintiff has, with the help of CPT, PONY, and Defendants, compiled a complete list of class members and obtained the amount of premiums paid for the vast majority of class members. CPT Decl. ¶¶ 4-13. The Settlement Class will provide relief to all affected PONY members and resolve their claims against the Settling Defendants as part of a single settlement equitably apportioning Defendant's limited funds.

### 2.    The Relief to Settlement Class Members

Ambassador will create a common fund ("Settlement Fund") consisting of $195,000 in cash.  Settlement Agreement ¶¶ 2.21 and 3.01.

The Settlement Fund will provide monetary relief for Settlement Class Members and pay the costs of Settlement Administration, Class Counsel's proposed attorneys' fees and expenses, and a Service Award to the Representative Plaintiff, as set forth in Sections ¶¶ 2.21 and 3.01, Articles III (p. 11), and IX (pp. 18-19).

Settlement Class Members shall receive a pro rata share of the Settlement Benefit

---

[2] Excluded from the Settlement Class are (i) Ambassador and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; and (iii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members.  Settlement Agreement ¶ 2.19.

Fund based upon the total amount they paid in premiums. [3] The Claims Administrator, CPT, will calculate the amount paid by Amended Settlement Class Members for whom there is available premium information (the "Direct Damages").  CPT Decl. ¶¶ 12-13. CPT will inform Settlement Class Members of the amount calculated to be the Direct Damages for each member and Settlement Class Members will be entitled to dispute the amount and present evidence demonstrating the total amount of premiums paid.  *Id.* For Settlement Class Members for whom there is no available premium information, CPT will request that they provide information or receipts to substantiate their premiums paid.  *Id.* Based on all information available, the size of the Settlement Class is 274 members. *Id.* ¶ 11.  The estimated payment to each Amended Settlement Class Member will differ since it is based on the total amount of premiums paid by each member.  For example, a class member who paid $250 in total premiums will receive proportionately less than one who paid $10,000 in total premiums.  For these reasons it is difficult to identify the estimated amount that any member will receive. If the Court grants the requested fee, the average payment to each class member will be $401.45

### 3.    The Proposed Release

Settlement Class Members will release all claims asserted in this case or that they could have asserted or could in the future assert against the Released Parties relating to the allegations, facts, or circumstances arising out of the Scheme and the allegations of the Complaint. Settlement Agreement ¶¶ 2.12 (Released Claims), 2.13 (Released Persons), 8.01 (Release). The language regarding the "release of the Unknown Claims, [including] an express waiver of rights under California Civil Code § 1542" is limited to the Plaintiff and does not apply to other Amended Settlement Class Members. *See* Preliminary Approval Order at 9, 22; *see also* Settlement Agreement ¶ 2.22.

---

[3] The "Settlement Benefit Fund" means the Settlement Fund less Settlement Administration costs, the proposed Attorneys' Fees and Expenses, and Plaintiff's Service Award.  ECF No. 138-3 ¶ 2.17.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT                    No. 8:21-CV-00199-SPG-DFM

### 4. The Proposed Settlement Administrator

The settlement administrator is CPT Group, Inc., which is experienced in formulating and effectuating notice programs and administering class action claims. The anticipated cost of notice and administration is estimated at approximately $20,000. Ram Decl. ¶ 18. The cost of settlement administration will come out of the Settlement Fund. Settlement Agreement ¶ 2.17, Articles III and IX. The cost of settlement administration is reasonable, relative to the value of the settlement. Ram Decl. ¶ 18.

### 5. CAFA Notice

This settlement is subject to the requirements of the Class Action Fairness Act of 2005, which requires that notice containing certain required information be served upon the appropriate State and Federal officials within ten days of the filing of a proposed settlement. 28 U.S.C. § 1715(b). Defendant mailed the CAFA notice to the appropriate officials on September 5, 2024. Ram Decl., Exhibit 1, CAFA Notice for the proposed Settlement in Del Obispo Youth Baseball v. The Ambassador Group LLC ("CAFA Notice").

Pursuant to the Preliminary Approval Order, CPT provided notice to the class via direct U.S. first class mail. CPT Decl. ¶ 19.

## III.   STATEMENT OF ISSUES

Whether the Court should grant final approval of the proposed settlement.

## IV.   AUTHORITY AND ARGUMENT

### A.   The Court properly certified the proposed Settlement Class.

Before assessing the parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Ann. Manual Complex Litig. § 21.632 (4th ed.),. The requirements are well known: numerosity, commonality, typicality, and adequacy-each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979-80 (9th Cir. 2011). The Court previously found that the Proposed Settlement Class

satisfied the requirements of Rule 23(a) and (b)(3). Order, ECF No. 144. The Proposed Settlement Class has not substantially changed since the Preliminary Approval Order and thus satisfies Rule 23.

### 1. The Settlement Class satisfies the requirements of Rule 23(a).

Generally, a class with forty or more members satisfies numerosity. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, the proposed Settlement Class of 274 Class Members satisfies the numerosity requirement.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). As the Court recognized previously, this case presents several common questions: (1) whether Defendants made misrepresentations with regards to the Policies; (2) whether those misrepresentations were material; (3) whether those misrepresentations were made willfully, recklessly, or negligently; and (4) whether Plaintiff and members of the Amended Settlement Class have sustained damages by reason of Defendants' misrepresentations and omissions. *See* ECF 62 ¶ 87(a)-(g).

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of all proposed class members because they were subjected to the same deceptive conduct and omissions by Settling Defendants and received the same or similar misrepresentations. *See* ECF 98-1 at 16. Plaintiff and Settlement Class Members are pursuing the same legal theories and have all been injured by Settling Defendants' conduct because of the misrepresentations regarding the Policies.

Lastly, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, courts resolve two questions: "(1) do the named plaintiffs and their

10

counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted). Plaintiff has already shown that it will vigorously pursue these claims on behalf of class members. It has produced documents, aided in discovery, assisted counsel in exchanges with opposing counsel, and closely followed the case. ECF No. 98-1 at 16-17. Plaintiff also assisted Class Counsel in contacting the PONY umbrella organization. Ram Decl., ¶ 15. There are no conflicts because Plaintiff, like every class member, purchased a Policy. ECF No. 98-1 at 16-17. Plaintiff has retained counsel with substantial experience litigating and trying consumer class action lawsuits like this one. *Id.*; Ram Decl. ¶ 21 (firm biographies of Plaintiff's counsel). Plaintiff's counsel have devoted a significant amount of time and will continue to commit the resources necessary to represent the class. Ram Decl. ¶ 20. Plaintiff and its counsel have demonstrated their commitment to prosecuting this case on behalf of all class members.

### 2. The Amended Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Both requirements are satisfied for the Amended Settlement Class.

#### a) Common questions predominate over any individual issues.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the Settlement Class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is

superior to other available methods for a fair and efficient resolution of the controversy. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'").  Importantly, predominance analysis in the settlement context need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620.

As the Court has stated multiple times, common questions present a significant aspect of this case. *See* Preliminary Approval Order at 15 ("the Court is aware of no change that would materially impact its previous holding that Plaintiff demonstrated common questions predominate and prosecuting the conduct as a class action is superior to other litigation methods."). Plaintiff alleges that Defendants made, effectively, a single misrepresentation regarding the nature of the Policies to Amended Settlement Class Members, *i.e.*, that there was an Issuing Carrier backing the Policies when, in fact, there was not. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (certification was appropriate where "[t]here is a single, central, common issue of liability"); 1 Newberg on Class Actions § 3:24 (5th ed.) (Claims that arise from "form contracts" are "often particularly appropriate for class treatment."). A liability analysis focuses primarily on the conduct of Ambassador and Gagliardi (and their respective directors, officers, and employees) and consists of substantial common evidence, including documents and testimony relating to the Captive Program and Defendants' knowledge of it. *See* ECF No. 98-1 at 19-24 (motion for class certification analyzing each individual cause of action). Accordingly, the Court should find common issues predominate.

b)    **A class action is superior to other available methods of adjudication.**

The purpose of the superiority requirement is to ensure judicial economy and that a

class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). Courts consider four factors in evaluating the superiority requirement: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). All of these factors support class certification. The high cost of pursuing claims against the Settling Defendants, including significant discovery and motion practice, outweighs the potential recovery for class members. *See Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d at 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). It is also "far more efficient" to litigate Plaintiff's claims based on a common misrepresentation and omission "on a classwide basis rather than in thousands of individual and overlapping suits." *Id.* at 1176; *see also Bibo v. Fed. Express, Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *9 (N.D. Cal. Apr. 21, 2009) ("avoiding repetitious suits before the courts of this state is a valid factor weighing toward class treatment of the claims"). Given the number of class members, the high cost of individual proof, and the common issues at the heart of the claims, the class action device is the superior method for adjudicating these claims. The Court should again find that a class action is superior to individual litigation. *See* Preliminary Approval Order, 16 ("As the Court has previously found, this case involves a need for collective recovery based on the singular nature of the scheme and current financial situation of the Settling Defendants, which supports the superiority of a class action over individual litigation.")

> **B.    The Settlement Should be Finally Approved.**

Amended Rule 23(e) standardizes the factors governing final approval, stating that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate"

PLAINTIFF'S MOTION FOR FINAL    No. 8:21-CV-00199-SPG-DFM
APPROVAL OF CLASS ACTION SETTLEMENT

after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

As previously established, Named Class Representatives and Class Counsel have adequately represented the Class. *See* Preliminary Approval Order at 14 ("it is still true that Plaintiff and Class Counsel have expended considerable time, expense, and resources"). The settlement was negotiated at arm's length over the course of the litigation using an experienced neutral. *See id.* at 22. The relief is adequate, taking into consideration the Defendants' financial conditions. Class members can submit evidence of the amount of premiums that they paid but need not take any other action to receive a settlement payment. And the settlement treats class members equitably relative to each other.

As discussed, Class Counsel have compiled an accurate list of 274 class members. CPT will consider all available information regarding premiums paid, calculate a pro rata distribution and send payments to the class members. *See* CPT Decl. ¶ 12. This represents a fair compromise and treats the class members fairly. As a widely respected and well-experienced settlement administrator, CPT can handle the claims process and will

14

1    effectively distribute relief to the class. *Id.* ¶ 2.

2        Pursuant to the Notice Plan, the Attorney General of the United States, and the 51

3    Attorneys General as well as the five territories were notified pursuant to CAFA, 28

4    U.S.C. § 1715, and given an opportunity to raise any objections. *See* CAFA Notice. Prior

5    to the final approval hearing, the Plaintiff Class and CPT will submit a report informing

6    the Court of any objection by governmental entities, as well as objections and opt-outs

7    from class members. *See* CPT Decl. ¶ 21.

8        **C.    The Notice Plan Met the Requirements of Due Process.**

9        In any proceeding that is to be accorded finality, due process requires that interested

10   parties be provided with notice reasonably calculated, under the circumstances, to apprise

11   them of the pendency of the action and afford them an opportunity to  present their

12   objections.  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

13   That means the settlement notices must fairly apprise the class members of the terms of

14   the proposed compromise and give class members sufficient information to decide

15   whether they should accept the benefits offered, opt out and pursue their own remedies, or

16   object to the settlement. *Id.* Additionally, the notice must be designed to have a reasonable

17   chance of reaching a substantial percentage of the class members. *Id.* at 318 (explaining

18   notice must be reasonably calculated to reach interested parties). For classes certified

19   under Rule 23(b)(3), "the court must direct to class members the best notice that is

20   practicable under the circumstances, including individual notice to all members who can

21   be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Under amended Rule

22   23(c)(2)(B), "[t]he notice may be by one or more of the following: United States mail,

23   electronic means, or other appropriate means." *Id.*

24       Here the Notice Plan was implemented with only minor, necessary modifications

25   from the notice proposed at Preliminary Approval and consisted of a direct mailing to the

26   addresses verified by both Defendant and the national umbrella PONY organization.  *See*

27   CPT Decl. ¶¶ 4-13, 19.  Accordingly, the Court should find the Notice Plan was

PLAINTIFF'S MOTION FOR FINAL          No. 8:21-CV-00199-SPG-DFM
APPROVAL OF CLASS ACTION SETTLEMENT

reasonably calculated to give actual notice to Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement and that the Notice Plan met the requirements of Rule 23 and due process.

## V. CONCLUSION

Plaintiff requests that the Court enter an order: (1) confirming the certification of the Settlement Class for settlement purposes only; (2) granting final approval of the Settlement; (3) finally appointing Plaintiff as Class Representative; (4) finally appointing Michael F. Ram and Marie N. Appel of Morgan & Morgan Complex Litigation Group as well as Gretchen M. Nelson and Gabriel S. Barenfeld of Nelson & Fraenkel LLP as Class Counsel; and (5) finally appointing CPT Group, Inc. as the Settlement Administrator.

Dated:                                     Respectfully Submitted,

                                           By:  /s/ Michael F. Ram

                                           **MORGAN AND MORGAN**
                                           **COMPLEX LITIGATION GROUP**
                                           Michael F. Ram (SBN 104805)
                                           mram@forthepeople.com
                                           Marie N. Appel (SBN 187483)
                                           mappel@forthepeople.com
                                           711 Van Ness Avenue, Suite 500
                                           San Francisco, CA 94102
                                           Telephone: (415) 846-3862
                                           Facsimile: (415) 358-6293

                                           **NELSON & FRAENKEL LLP**
                                           Gretchen M. Nelson (SBN 112566)
                                           gnelson@nflawfirm.com
                                           Gabriel S. Barenfeld (SBN 224146)
                                           gbarenfeld@nflawfirm.com
                                           601 S. Figueroa Street., Suite 2050
                                           Los Angeles, California, 90017
                                           Telephone: (213) 622-6469
                                           Facsimile: (213) 622-6019

PLAINTIFF'S MOTION FOR FINAL                No. 8:21-CV-00199-SPG-DFM
APPROVAL OF CLASS ACTION SETTLEMENT

*Counsel for Plaintiff and the Proposed Classes*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFF'S MOTION FOR FINAL                 No. 8:21-CV-00199-SPG-DFM
APPROVAL OF CLASS ACTION SETTLEMENT

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, counsel of record for Plaintiff, hereby certifies that this brief contains 4941 words, which complies with the word limit of L.R. 11-6.1.  I have relied on the word count in Microsoft Word which calculates the word count for the entire document including footnotes.

Dated: September 9, 2024

_____ */s/ Michael F. Ram* _____
Michael F. Ram

PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

No. 8:21-CV-00199-SPG-DFM