1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   DEL OBISPO YOUTH BASEBALL,                Case No. 8:21-cv-00199-SPG-DFM
     INC. d/b/a DANA POINT YOUTH
12   BASEBALL, individually and on behalf      **ORDER GRANTING PLAINTIFFS'**
     of all other similarly situated individuals   **MOTION FOR PRELIMINARY**
13   and entities,                             **APPROVAL OF CLASS ACTION**
                                               **SETTLEMENT AND MOTION FOR**
14                          Plaintiff,         **ATTORNEYS' FEES AND COSTS**
                                               **[ECF NOS. 148, 149]**
15                v.

16   THE AMBASSADOR GROUP LLC
     d/b/a AMBASSADOR CAPTIVE
17   SOLUTIONS, et al.,

18                          Defendants.

19

20

21          Before the Court is an unopposed motion for final approval of the amended class

22   action settlement ("Motion"), (ECF No. 148 ("Motion")), and unopposed motion for

23   attorneys' fees ("Fees Motion"), (ECF No. 149 ("Fees Motion")) filed by Plaintiff Del

24   Obispo Youth Baseball, Inc.'s (d/b/a Dana Point Youth Baseball ("DPYB")) ("Plaintiff"

25   or "DPYB"), individually and on behalf of the class it seeks to represent (collectively,

26   "Plaintiffs"). Having considered the parties' submissions, the relevant law, the record in

27   this case, and oral arguments during the hearing on the Motion and Fees Motion, the Court

28   **GRANTS** Plaintiff's Motion and **GRANTS** Plaintiff's Fees Motion.

## I.   BACKGROUND

### A.   Plaintiff's Allegations

This is a nationwide class action lawsuit brought by Plaintiff.  Plaintiff is a nonprofit organization that provides "the means for community youth in South Orange County to develop qualities and attributes through baseball." (ECF No. 132 ("TAC") ¶ 14).  Plaintiff is a member of "Protect Our Nation's Youth Baseball, Inc." ("PONY National"), a larger nonprofit organization that is comprised of over 500,000 players in 4,000 leagues located throughout the United States and in more than 40 countries.  (*Id.* ¶¶ 15–16).

The Third Amended Complaint ("TAC") alleges Defendants Ambassador Group LLC, (d/b/a Ambassador Captive Solutions) ("Ambassador"), and Brandon White ("White"), are part of a nation-wide association-in-fact enterprise with Performance Insurance Company SPC ("Performance"), Goldenstar Specialty Insurance, LLC ("Goldstar"), Dominic Cyril Gagliardi ("D. Gagliardi"), and Marco Solomon Gagliardi ("M. Gagliardi").  (*Id.* ¶ 18).  This enterprise is alleged to have misappropriated premiums paid by Plaintiff DPYB and other youth sports teams, leagues, and athletes throughout the United States by selling them counterfeited and nonexistent accident and health insurance policies (the "Counterfeited Policies") that purported to provide accident, health, and other insurance coverage to the youth sports teams, leagues, and athletes.  (*Id.*).

The TAC alleges the Counterfeited Policies were sold through a captive reinsurance arrangement, which allows a broker—who is not licensed to issue insurance policies—to use intermediaries to form an indirect relationship with an insurance company ("Issuing Carrier").  (*Id.* ¶ 31).  The TAC alleges that Defendants formed such a captive reinsurance enterprise (the "Captive Program").  In the Captive Program, Gagliardi Insurance Services, Inc. ("Gagliardi Insurance")[1] served as the broker,[2] Goldenstar and Performance served as

---

[1] Gagliardi Insurance is not named as a defendant in the case.

[2] The TAC alleges M. and D. Gagliardi served as the Chief Executive Officer and President of Gagliardi Insurance, respectively, during the relevant time period.  (TAC ¶¶ 22–24).

the Captive, Defendant White controlled Performance, and Defendant Ambassador was the "captive consultant." (TAC ¶¶ 39–46).[3]

Under this supposed Captive Program, the Defendants and Gagliardi Insurance sold Counterfeited Policies to Plaintiff and the class members. (*Id.* ¶ 46). Instead of engaging an Issuing Carrier, the TAC alleges that Defendants forged documents that misled Plaintiff and the class members into believing that an Issuing Carrier had issued actual policies. *See* (*id.* ¶¶ 46–47). Plaintiff and the class members paid substantial premiums to Defendants on Counterfeited Policies in reliance on the belief that the payments were being remitted to the supposed Issuing Carrier. Defendants never sent payments to the Carrier, however, and, instead, stole all such premium payments. *See, e.g.*, (*id.* ¶¶ 26–29, 54).

On or about October 27, 2020, Gagliardi Insurance informed Plaintiff that the Counterfeited Insurance policies it had provided to Plaintiff were the subject of a federal lawsuit brought by several issuing carriers, who were challenging Defendants' unauthorized use of the issuing carriers' marks. (*Id.* ¶ 70).

## B.  Procedural History

On January 28, 2021, Plaintiff filed its Class Action Complaint against Defendants Ambassador, White, Performance, and Goldenstar, alleging five causes of action: (1) Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) conversion; (3) unjust enrichment; (4) unfair competition; and (5) negligence. (ECF No. 1). Defendants Ambassador and White moved to dismiss Plaintiff's Class Action Complaint or, in the alternative, to transfer the action to the Western District of Kentucky. (ECF No. 24).

Plaintiff then filed the First Amended Complaint, which asserted the same five causes of action but added Defendant D. Gagliardi. (ECF No. 34). In response, Defendants Ambassador and White filed a motion to dismiss the First Amended Complaint or, in the

---

[3]The TAC alleges captive reinsurance transactions are often facilitated by a captive intermediary or consultant that assists the broker in developing a business plan, forming the Captive, and identifying an Issuing Carrier to issue the policies that will be sold by the broker and be the subject of the reinsurance agreement. (*Id.* ¶ 38). Defendant Ambassador is such a captive intermediary. (*Id.*).

alternative, to transfer the action to the Western District of Kentucky. (ECF No. 41). Judge Selna, the district judge previously presiding over this case, denied Defendant's motion in its entirety. (ECF No. 51). Thereafter, Plaintiff filed its Second Amended Complaint, asserting the same five causes of action but adding Defendant M. Gagliardi. (ECF No. 62). The Clerk of Court subsequently entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure against Defendant M. Gagliardi. (ECF No. 80).

On September 8, 2022, Plaintiff filed a motion to certify the class. (ECF Nos. 97, 98). Thereafter, the parties requested, and the Court granted, continuances of the hearing on class certification because the parties had been engaging in mediation and expected to reach a settlement. (ECF Nos. 103, 107, 112, 113).

On March 23, 2023, Plaintiff and Defendants Ambassador and White (the "Settling Defendants") filed a stipulation notifying the Court that they had reached a settlement. (ECF No. 116). Thereafter, per the parties' request, the Court stayed all non-settlement related proceedings while the parties finalized the class action settlement. (ECF No. 117). On November 28, 2023, Plaintiff filed its unopposed motion seeking preliminary approval of the class action settlement. (ECF No. 120). After the Court heard oral argument on the motion, on February 16, 2024, the Court granted, in part, and denied, in part Plaintiff's motion. *See* (ECF No. 124).

Specifically, the Court certified the proposed class for purposes of settlement, appointed class counsel and Plaintiff as the representative plaintiff, and found that the original settlement agreement did not appear to have any markers of collusion and thus appeared to result from arms-length negotiations. The Court, however, found several deficiencies with the original settlement agreement, including that the original settlement agreement: (1) was unclear regarding the status of the non-settling Defendants—namely, Performance, Goldenstar, D. Gagliardi, and M. Gagliardi—and the impact of the original settlement agreement on the litigation against them; (2) contained a release of claims that was too broad; (3) was insufficient in explaining how the addresses of class members would be ascertained for the purposes of notice; and (4) appeared to provide for a

settlement amount that was a mere fraction of the possible recovery, given the broad scope of the class.  *See* (*id.*).

In response, on April 2, 2024, Plaintiff filed its TAC, the operative complaint, clarifying the scope of the class but otherwise asserting the same causes of action as the prior pleadings. *See generally* (TAC). On April 22, 2024, Plaintiff filed a motion again seeking preliminary approval of an amended settlement agreement ("Amended Settlement Agreement") that was revised to address the deficiencies in the original settlement agreement. (ECF No. 138). Plaintiff has also dismissed Defendants Performance, Goldenstar, and D. Gagliardi from the action. (ECF Nos. 141–43). No opposition to the Motion was filed. The Court granted Plaintiff's motion for preliminary approval on June 11, 2024, finding that the previously-identified deficiencies in the prior settlement agreement were addressed by the Amended Settlement Agreement, and Rule 23's factors were satisfied for the purposes of conditionally certifying the Settlement Class. (ECF No. 144 ("Preliminary Approval Order")).

On September 9, 2024, Plaintiff filed the instant Motion for Final Settlement Approval, and a Motion for Attorneys' Fees. (ECF Nos. 148, 149). The Motion states that the proposed Settlement Class has not substantially changed since the Court's review in its Preliminary Approval Order, and requests this Court finalize the Settlement Class, Amended Settlement Agreement, and attorneys' fees and costs and DPYB's service award under Rule 23. (Motion at 16). The Court held a final fairness hearing on February 19, 2025. (ECF No. 158). As of the time of the final fairness hearing, no objections have been received from any class member as to the Amended Settlement Agreement or Settlement Class, and no disputes have been raised regarding a Settlement Class member's benefit amount.

### C.    The Amended Settlement Agreement

Plaintiff and Settling Defendants have negotiated the Amended Settlement Agreement. (ECF No. 148-1 ("Ram Decl.") ¶ 8, ECF No. 138-3 ("Am. Settlement")). The Amended Settlement Agreement provides the following key provisions.

1           1.   <u>Class Definition</u>

The Amended Settlement Agreement seeks to certify a nationwide settlement class ("Settlement Class") defined as: "[A]ll members of PONY National that purchased a general commercial, accident, directors' and officers', auto and/or other type of policy bounded by Gagliardi Insurance Services, Inc. and that made such purchase in the United States on or after January 1, 2018 through January 28, 2021 (the 'Class Period')." (Am. Settlement § 2.19). Excluded from the Settlement Class are "(i) Ambassador and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; and (iii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members." (*Id.*).

The Settlement Class is 274 members, and was compiled with the help of CPT Group Inc. ("CPT"), PONY National, and Defendants. *See* (Motion at 7; Ram Decl. ¶ 17; ECF No. 155, Declaration of Kusay Ghenniwa on Behalf of Settlement Administrator Regarding Mailing of Settlement Notice ("CPT Decl."), ¶¶ 4–13). The list was created by combining lists from two sources: (1) an excel sheet provided to CPT by Plaintiff from Defendant D. Gagliardi, representing the "Total Premiums Paid" by various entities for a 6-month period in 2020, which was not limited to members of PONY National and had a number of duplicates ("D. Gagliardi List"); and (2) a list provided to CPT by PONY National with 44 members that self-identified as having Gagliardi insurance ("PONY List"). (Motion at 7–8; CPT Decl. ¶ 4–13). From the resulting list of over 1,100 organizations, Plaintiffs' counsel removed 250 records unrelated to baseball, and PONY National removed 641 records that were not PONY National leagues. (ECF No. 148 at 8; CPT Decl. ¶ 8–10). CPT conducted a final analysis and data scrub to create a list of 230 unique organizations from the D. Gagliardi List and 44 unique organizations from the PONY List for a combined list of 274 class members. (Motion at 8; CPT Decl. ¶ 11–12).

### 2. Settlement Amount

Pursuant to the Amended Settlement Agreement, Settling Defendants will create a common fund ("Settlement Fund") consisting of $195,000 in cash that Settling Defendants have agreed to pay to fully resolve the claims of the proposed Settlement Class. (Am. Settlement § 2.21). All members of the Settlement Class ("Settlement Class Members") will receive a pro rata share of the Settlement Fund, "less the Costs of Settlement Administration and Proposed Class Counsel's Attorneys' Fees, Costs, and Expenses; and Service Award to Representative Plaintiff." (*Id.* § 2.17). The pro rata share will be determined based upon the costs incurred by each Settlement Class Member in purchasing its Counterfeited Policy during the Class Period (the "Benefit Amount"). (*Id.* §§ 2.04, 3.02). To that end, the Claims Administrator will calculate the total amount paid for each Counterfeited Policy by each Settlement Class Member during the Class Period (the "Direct Damages"). (*Id.* § 3.02). If the Settlement Benefit Fund has more than (or not enough) money to pay these amounts, there will be a pro rata increase (or decrease) to each Benefit Amount. (*Id.*). Within 90 days of the Effective Date,[4] the Settlement Administrator shall mail the Settlement Class Member's Benefit Amounts, which will be issued by check.[5] (*Id.* § 10.02).

---

[4] The Amended Settlement Agreement established the Effective Date as essentially the date that the Amended Settlement Agreement, as set forth here, has been finally adjudged. Specifically, Effective Date is defined as the first date by which all the following events have occurred and been met: the Court has entered the Order of Preliminary Approval with notice of a final approval hearing, the Court has entered the Judgment granting final approval to the Amended Settlement Agreement, and the Judgment is affirmed either by a failure to appeal within 30 days or, if appealed, the Judgment is upheld. (Am. Settlement §§ 2.09, 11.01).

[5] The Amended Settlement Agreement provides that Settling Defendants shall cause funds sufficient for the Claims Administrator to pay the Benefit Amounts at some time after the Effective Date but with enough time for the Benefit Amounts to be paid to the Settlement Class to be disbursed to an account as directed by the Administrator. (*Id.* § 10.02).

### 3. Attorneys' Fees and Costs

The Amended Settlement Agreement provides that the putative class will be represented by Michael F. Ram and Marie N. Appel of Morgan & Morgan and Gretchen M. Nelson and Gabriel S. Barenfeld of Nelson & Fraenkel LLP ("Class Counsel"). (*Id.* § 2.05). The Court appointed these attorneys as Class Counsel in its first order regarding preliminary approval of class settlement. *See* (ECF No. 124 at 16).

Further, Settling Defendants do not oppose Class Counsel's request for $65,000 from the Court for their attorneys' fees, costs, and expenses to be paid from the Settlement Fund. (Am. Settlement § 9.02). Plaintiff represents that its attorneys have actually incurred lodestar fees of $672,054.46, and $14,373.21 in expenses, and thus the $65,000 requested is only a small fraction of fees and expenses actually incurred. (ECF No. 149-1, Declaration of Michael F. Ram in Support of Motion for Attorneys' Fees and Expenses ("Ram Fees Decl.")¶¶ 10–11; ECF No.149-3, Declaration of Gabriel S. Barenfeld ("Barenfeld Fees Decl.") ¶ 6).

### 4. Released Persons

The Amended Settlement Agreement proposes to release claims against "Released Persons," defined in the Amended Settlement Agreement as:

> Ambassador, Brandon White, and their current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct, as well as these entities' respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers. Released persons does not include Dominic Cyril Gagliardi, Gagliardi Insurance, Performance Insurance Company or Goldenstar Specialty Insurance LLC or any of their predecessors, successors, directors, heirs, officers, employees, principals, agents, attorneys, insurers or reinsurers, except that Released Persons expressly includes Brandon White.

(Am. Settlement § 2.13). The Amended Settlement Agreement also provides that it is the intent of the parties that the "Release shall not be considered, interpreted, or construed to

prevent Settlement Class Members from pursuing claims related to the Scheme and the allegations, facts and circumstances alleged in the Complaint against any person who is not a Released Person." (*Id.* § 8.01).

5. <u>Released Claims</u>

The Amended Settlement Agreement requires Settlement Class Members to release:

> any and all claims, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown, including without limitation, negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, any federal, state, or local statutory or regulatory claims, including, but not limited to, pursuant to consumer protection laws, unfair and deceptive trade practice laws, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Settlement Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Scheme and the allegations, facts, or circumstances described in the Complaint.

(*Id.* § 2.12).

The Amended Settlement Agreement provides that Representative Plaintiff releases Unknown Claims, which is defined as "any of the Released Claims that Representative Plaintiff does not know or suspect to exist in his/her favor at the time of the release . . . that, if known by it, might have affected its settlement with, and release of, the Released Persons, or might have affected its decision not to object to and/or to participate in this Settlement

Agreement." (*Id*. § 2.22). Plaintiff's release of the Unknown Claims also includes an express waiver of rights under California Civil Code § 1542.[6]

6.    Settlement Administrator

The Settlement Administrator is CPT Group, Inc. ("CPT"). (Am. Settlement § 2.16). Class Counsel represents that CPT is "experienced in formulating and effectuating notice programs and administering class action claims." (Ram Decl. ¶ 18). According to Class Counsel's review of CPT's proposal, their experience and pricing is most suited for the "unique financial circumstances of this Action." (*Id*.). The anticipated cost of notice and administration was estimated at approximately $20,000. (*Id*.). CPT later updated this estimate to state that it will charge a total of $15,000 in costs associated with the administration of the Settlement to be paid from the Settlement Fund. (Am. Settlement § 2.17; Supplemental Declaration of Kusay Ghenniwa (ECF No. 150-1 ("Suppl. CPT Decl.")) ¶ 8).

**D.    Notice**

On September 9, 2024, the Notice of Class Action Settlement and a Benefit Amount Form ("Class Notice Packet") was disseminated via U.S. first class mail to all 274 organizations on the final class list. *See* (Motion at 8; CPT Decl. ¶ 19). In addition, CPT established a dedicated settlement website, which included the Class Notice Packet, Complaint, important dates for objections and final fairness hearings, and contact information for questions.[7] (CPT Decl. ¶ 16). CPT established a 24-hour, toll-free support line with live support during normal business hours, and a dedicated email address which Settlement Class members could use to communicate regarding the settlement. (*Id*. ¶¶ 17–

---

[6] California Civil Code section 1542 provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." *See also* (Am. Settlement § 2.22).

[7] The website also included the updated final approval hearing date, which was updated from December 18, 2024, to February 19, 2025. *See* https://www.cptgroupcaseinfo.com/AmbassadorGroupSettlement.

18).  The Benefit Amount Form included the amount of the premium paid based on the information currently available to CPT, as well as their estimated settlement benefit amount.  (CPT Decl. ¶ 14; ECF No. 155-1 ("Notice of Class Action Settlement") at 3–4).  The Notice of Class Action Settlement also included the amount of fees and costs award requested here.  (Notice of Class Action Settlement at 3–4).  To date, no Settlement Class member has objected to the proposed Amended Settlement Agreement or fee awards, opted out, or disputed the amount of premiums paid by the class member as listed in the Benefit Amount Form.  (ECF No. 150 ("Reply") at 2; Suppl. CPT Decl. ¶¶ 4–5).

Further, notice subject to the Class Action Fairness Act of 2005 was mailed to the appropriate federal and state officials on September 5, 2024.  (Motion at 15; Ram Decl. ¶ 22).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure mandates judicial approval of all class action settlements.  *See* Fed. R. Civ. P. 23(e).  When approving a class settlement prior to class certification, courts must engage in a two-step process.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  First, the court must certify the proposed settlement class.  *Id.*  In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Second, once a class is certified, the court may approve the class settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) ("The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights.").  Accordingly, before approving a class settlement, Rule 23(e) directs courts to consider the following factors when assessing the fairness and reasonableness of a class settlement:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment;

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

Moreover, before the 2018 amendment to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit developed its own list of eight fairness factors – commonly referred to as the "*Churchill* factors." *See In re Bluetooth*, 654 F.3d at 964 (citing *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)). However, the amended Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "The goal of [amended Rule 23(e)] is . . . to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. Some of the *Churchill* factors tend to overlap with the factors from Rule 23(e). *See, e.g.*, *Lalli v. First Team Real Est.-Orange Cnty.*, 2022 WL 8207530, at *8 (C.D. Cal. Sept. 6, 2022) (deciding not to duplicate analysis when the second *Churchill* factor "closely

mirrors" the first factor listed in Rule 23(e)(2)(C)); *Hang v. Old Dominion Freight Line, Inc.*, 2024 WL 2191930, at *7 (C.D. Cal. May 14, 2024).[8]  Therefore, for the sake of avoiding repetitious analysis and remaining focused on the core concerns outlined by both Rule 23(e) and the Ninth Circuit, the Court will incorporate in its Rule 23(e) analysis the relevant *Churchill* factors that shed additional light on the fairness of the proposed settlement.  *See infra* Sections III.B. and IV.

## III.    FINAL SETTLEMENT APPROVAL

The parties seek certification of the Settlement Class and approval of the Amended Settlement Agreement pursuant to Rule 23.  For the reasons stated below, the Court approves the Amended Settlement Agreement, finalizes the Settlement Class, and grants the Fees Motion.

### A.    Certification of Class Settlement Under Rule 23(a) and 23(b)

In its Preliminary Approval Order, the Court conducted an extensive analysis and certified a provisional settlement class under Rules 23(a) and (b).  *See generally* (Preliminary Approval Order at 10–16).  The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); *see also Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . . this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval."); *Lalli*, 2022 WL 8207530, at *4 (certifying a settlement class for final approval absent material changes during the interim between the court's preliminary and final certification).

Here, the nature of the Settlement Class has not materially changed since it was conditionally certified, and all the criteria for class certification remain satisfied.  The only

---

[8] After the Rule 23(e) amendment, the Ninth Circuit instructed "district courts to consider these [*Churchill*] factors in their holistic assessment of settlement fairness."  *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021).

change to the Settlement Class since it was conditionally certified is its size:  the class dropped from 614 potential members to 274 members.  *Compare* (Preliminary Approval Order at 11) *with* (Motion at 7).  The Court finds that 274 members is still adequately numerous that "joinder of all class members is impracticable."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  To be impracticable, joinder must be difficult or inconvenient, but need not be impossible.  *Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 522 (C.D. Cal. 2012) (citing Fed. R. Civ. P. 23(a)(1), *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964)).  "The numerosity requirement is not tied to any fixed numerical threshold," but "[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40."  *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citing cases); *Woodard v. Labrada*, 2019 WL 4509301, at *4 (C.D. Cal. Apr. 23, 2019).  While 274 class members is smaller than the anticipated 614 class members, numerosity remains satisfied.  *See Rannis*, 380 F. App'x at 651.  Therefore, the Court incorporates by reference its analysis in the Preliminary Approval Order, except as to numerosity, which is addressed above, and the Court certifies the Settlement Class.

### B.    Final Approval of the Proposed Class Settlement

Upon certification of the Class, the Court may only approve the Amended Settlement Agreement upon finding the agreement is fair, reasonable, and adequate pursuant to Rule 23(e)(2).  The Court next turns to each factor.

1.    Adequacy of Representation by Class Representatives and Class Counsel

The first factor examines whether the class representatives and class counsel adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(A).  Class representatives are adequate if the named plaintiff and counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  Adequate representation of counsel is generally presumed in the absence

of contrary evidence. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

In its Preliminary Approval Order, the Court re-affirmed an earlier order that Plaintiff DPYB and Plaintiffs' Counsel satisfied the adequacy requirement under Rule 23(a)(4) and appointed Plaintiffs' Counsel as Class Counsel. (Preliminary Approval Order at 14, 24); *see Hilsley v. Ocean Spray Cranberries, Inc*., 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

Here, Plaintiff DPYB diligently represented class members' interests by devoting significant time to assisting Class Counsel over the three years of the case, including responding to discovery and aiding in mediation. (Ram Decl. ¶ 19). Additionally, there is no conflict of interest apparent to the Court between Plaintiff DPYB and the rest of the class members, given that amounts granted under the Amended Settlement Agreement relate to premiums actually paid by class members.

Further, the Court finds Class Counsel is more than adequate. Class Counsel state that they have extensive experience litigating and evaluating claims and defenses in class actions matters. (Ram Decl. ¶ 21; Barenfeld Fees Decl. ¶ 5). Plaintiff and Class Counsel possessed sufficient information to make an appropriate and informed evaluation of the proposed settlement. Accordingly, the Settlement Class is adequately represented, and this factor weighs in favor of approval of the proposed settlement.

### 2. Arm's-Length Negotiations

The second factor requires the parties to negotiate the proposed settlement "at arm's length." Fed. R. Civ. P. 23(e)(2)(B). With this factor, the Court takes into account "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. The Court previously found that the settlement negotiations were the result of arm's-length negotiations. *See* (Preliminary Approval Order at 22). During the litigation, the parties engaged in "extensive discovery,"

serving "numerous interrogatories and requests for production."  (Ram Decl. ¶ 5); *see Martinez v. Helzberg's Diamond Shops*, 2021 WL 9181893, at *5 (C.D. Cal. Sept. 24, 2021) (noting that discovery may lead to the parties obtaining "a clear view of the strengths and weaknesses of their cases") (internal quotation marks omitted).  The Court is aware of no facts that would change its previous finding of arm's-length negotiations in the Preliminary Approval Order.

Moreover, the Advisory Committee Notes also state that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes; *see, e.g.*, *Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at 7 (C.D. Cal. Apr. 5, 2018) (concluding that "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").  The parties participated in a mediation with Hon. Andler (Ret.), a retired Judicial Officer experienced with class actions, mass tort litigation, and other complex cases.  (Ram Decl. ¶ 8).  The parties reached a settlement only after this extensive investigation and mediation and did not discuss attorney's fees whatsoever in the negotiations.  (*Id.*).  The Court finds that the parties have negotiated the Amended Settlement Agreement at arm's length.  Accordingly, this factor weighs in favor of approval of the proposed Settlement.

### 3. Adequacy of the Relief Provided for the Class

The third factor considers whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  The Court addresses each factor in turn and finds that all factors weigh in favor of the adequacy of relief provided to the class by the Amended Settlement Agreement.

1            *a)*      *Costs, Risks, and Delay of Trial and Appeal*

2          "Often, courts may need to forecast the likely range of possible classwide recoveries

3 and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018

4 Advisory Comm. Notes. When considering "the costs, risks, and delay of trial and appeal,"

5 courts in the Ninth Circuit have incorporated the following *Churchill* factors in the

6 analysis: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely

7 duration of further litigation; [and] the risk of maintaining class action status throughout

8 the trial." *Hanlon*, 150 F.3d at 1026. "Generally, unless the settlement is clearly

9 inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

10 with uncertain results." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal.

11 June 27, 2014) (internal quotation marks omitted). When assessing both the strength and

12 risks of Plaintiffs' case, courts need not "reach any ultimate conclusions regarding the

13 contested issues of fact and law that underlie the merits of this litigation." *Herrera v. Fed.*

14 *Express Corp.*, 2020 WL 2951122, at *4 (C.D. Cal. Mar. 31, 2020) (internal quotation

15 marks omitted).

16          Plaintiffs assert that "relief is adequate, taking into consideration the Defendants'

17 financial conditions." (Motion at 20). In particular, during mediation, Plaintiff and Class

18 Counsel learned that the remaining policy limit on the Settling Defendants' wasting policy

19 was $451,000. (Ram Decl. ¶ 9). Therefore, a settlement amount of $195,000 was

20 significant considering that remaining amount and other litigation against the Settling

21 Defendants that was expected to be satisfied from the same policy. (*Id.*). Despite this

22 "constrain[t]" in Defendants' resources, "Plaintiff pressed as hard as possible to obtain as

23 much as possible from the available insurance." (*Id.* ¶¶ 9–10). Given the limits of

24 Defendants' resources and high cost of continued litigation, the Court finds that this factor

25 favors approval of the proposed Settlement.

26            *b)*      *Effectiveness of the Method of Distributing Relief*

27          Next, the Court must examine "the effectiveness of any proposed method of

28 distributing relief to the class, including the method of processing class-member claims."

Fed. R. Civ. P. 23(e)(2)(C)(ii).  "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  *Musgrove v. Jackson Nurse Pros., LLC*, 2022 WL 18231364, at *6 (C.D. Cal. June 24, 2022) (quoting 4 Newberg on Class Actions, § 13:53 (5th ed.)).

Here, the Amended Settlement Agreement outlines a plan for allocating the Settlement Benefit Fund to each class member on a pro-rated basis of premiums actually paid by each class member on an at-issue policy.  (Am. Settlement at § 3.02).  If the Settlement Benefit Fund has more than (or not enough) money to pay these amounts, there will be a pro rata increase (or decrease) to each Benefit Amount.  (*Id.*).  If the Court approves the Settlement, CPT will mail a check of each Settlement Class Member's respective share.  (*Id.* § 10.02).  The Court finds this method of distributing relief simple and effective, thereby favoring final approval of the Settlement.

c)    *Proposed Award of Attorneys' Fees*

The third factor analyzes "the terms of any proposed award of attorneys' fees, including the timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  The Court must, therefore, "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement included a "kicker" or "reverter" clause.  *Briseño v. Henderson*, 998 F.3d 1014, 1023, 1026-27 (9th Cir. 2021).  However, "[t]he presence of these three signs is not a death knell."  *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021).

The Court previously found, applying the factors above and on the same facts, that Plaintiffs' Counsel's proposed award of attorneys' fees is reasonable, given the extensive litigation and limited resources available for settlement, and "resulted from sufficiently serious, informed, non-collusive negotiations."  (Preliminary Approval Order at 23–24).

Since the Preliminary Approval Order, Plaintiffs' Counsel has "worked to confirm the number of potential Amended Settlement Class Members," and "are prepared to continue to devote the resources necessary to representing the interests of the proposed class." (Ram Decl. ¶¶ 14, 20). The Court finds these facts do not materially change its prior analysis and incorporates its previous analysis by reference. (Preliminary Approval Order at 23–24).

### d) Settlement Agreement with Lead Plaintiff

The Court must also evaluate any agreement made in connection with the Amended Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). "Courts have discretion to issue incentive awards to class representatives." *Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *9 (C.D. Cal. July 19, 2021) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)). Incentive or service awards intend to compensate class representatives for "work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts evaluate these awards relative to the plaintiff's efforts, considering the financial or reputational risk undertaken, any personal difficulties encountered by the plaintiff, the amount of time spent, the duration of the litigation, and any personal benefit (or lack thereof) enjoyed by the plaintiff. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017); *Ochinero*, 2021 WL 4460334, at *9. The Ninth Circuit and many district courts in this Circuit have viewed $5,000 service awards as reasonable. *See In Re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 943 (9th Cir. 2015) ($5,000 service award reasonable when average payment to class member was $12); *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *Odrick v. UnionBancal Corp.*, 2012 WL 6019495, at *6–7 (N.D. Cal. Dec. 3, 2012). District courts also consider the "proportionality between the incentive payment and the range of class members' settlement awards." *Smith*, 2016 WL 362395, at *10.

Here, the Plaintiff requests that the Court approve a service payment of $1,000. (Fees Motion at 14). Notice of the requested service payment of $1,000 was provided to all members of the Settlement Class, and no objection to the award was raised. (Suppl. CPT Decl. ¶ 5; Notice of Class Action Settlement at 4). Plaintiff worked diligently with counsel to prepare and file pleadings, produce documents, and otherwise assist in prosecution of the litigation. (Ram Fees Decl. ¶ 12).

The Court finds that the requested $1,000 award is reasonable. If the Court approves the Settlement, the average class member payment will be $467.77, and the highest payment will be $5,204.40. (Suppl. CPT Decl. ¶ 7). Plaintiff's award would be 5.2 times less than the highest payment, and only 2.13 times more than the average payment. Further, Plaintiff's award would be only 0.5% of the gross settlement amount of $195,000. Therefore, the Court finds that the $1,000 incentive award to Plaintiff is reasonable in light of "the proportion of the [representative payment] relative to the settlement amount[] and the size of [the] payment." *Flores v. ADT LLC*, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947) (finding an award of 1% of the gross settlement amount was reasonable).

### 4.    Equitable Treatment of Class Members

The last factor in Rule 23(e)(2) turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In other words, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

Here, the proposed Settlement method "takes appropriate account of differences" between the claims of class members. *Id.* The Settlement Administrator will calculate and disburse each class members' individual settlement amount by pro-rating the Settlement Benefit Fund based on total premiums paid by each class member. *See* (Am. Settlement § 3.02); *see also* (Notice of Class Action Settlement at 3). Based on this allocation, the

Amended Settlement Agreement treats and compensates each class member fairly and equitably and therefore weighs in favor of approval.

### C.    The Notice Plan Met the Requirements of Federal Rule of Civil Procedure 23(c)(2)(B)

For classes certified under Rule 23(b)(3), such as this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) specifies that "United States mail" is one of the methods that may be used to provide notice." Fed. R. Civ. P. 23(c)(2)(B). The notice further must include certain substantive elements, stated "clearly and concisely" and "in plain, easily understood language":

    (i)    the nature of the action;

    (ii)    the definition of the class certified;

    (iii)    the class claims, issues, or defenses;

    (iv)    that a class member may enter an appearance through an attorney if the member so desires;

    (v)    that the court will exclude from the class any member who requests exclusion;

    (vi)    the time and manner for requesting exclusion; and

    (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotations and citation omitted).

First, the Court finds that the Plaintiff and Class Counsel have provided the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Plaintiff and Class Counsel took "reasonable effort[s]" to provide individual notice to Proposed Class Members through obtaining, analyzing, and verifying lists of Proposed Class

Members and "direct[ly] mailing to the addresses" of Proposed Class Members by United States mail the Class Notice Packet. *See supra* Section I.C.1; (Motion at 21). Second, as the Court previously found, the notices contain "the definition of the Settlement Class; the main terms of the Amended Settlement Agreement; the Settlement Class Members' rights and options under the Amended Settlement Agreement, including how to be excluded from or object to the Amended Settlement Agreement; a description of the release; and [] the toll-free number and a website to aid any Settlement Class Members." (Preliminary Approval Order at 20; Notice of Class Action Settlement). The Notice of Class Action Settlement also contains the necessary recitals under Fed. R. Civ. P. 23(c)(2)(B).

## IV.  ATTORNEYS' FEES AND COSTS

Class counsel requests attorneys' fees and expenses in the amount of $65,000. (Fees Motion). No class members have objected to Class Counsel's requested award, which was included in the September 9, 2024, notice to class members. (Reply at 2; Notice of Class Action Settlement at 3).

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. Attorneys' fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement." *In re Bluetooth*, 654 F.3d at 941.

Where a fee-shifting statute applies, the court may award fees using the lodestar method. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029. The reasonable hourly rate is the prevailing market rate in the geographic community, taking into consideration "the experience, skill, and reputation of the attorney." *Gonzales v. Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013) (citation omitted). "There is a strong presumption that the lodestar figure represents a reasonable fee." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 1007 (internal quotation and citation omitted). However, "[t]he resulting

figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029.

Here, Plaintiff's brings a claim under the civil RICO statute, which provides for an award of attorney's fees and costs to the prevailing party. 18 U.S.C. § 1964(c). Class Counsel claims the lodestar is $672,054.46, with $14,373.31 incurred in costs, but, pursuant to the Amended Settlement Agreement, is requesting only $65,000 in payment of fees and costs. (Fees Motion at 11–12). As Class Counsel notes, this payment represents only 9.67% of the claimed lodestar. (*Id.*). Class Counsel from Morgan & Morgan reports that attorneys at his firm worked in total 874.20 hours on this case, at rates ranging from $225 per hour for a paralegal, to $1,300 per hour for a senior attorney. (Ram Fees Decl. ¶ 7). Class Counsel from Nelson & Fraenkel LLP reports that attorneys at his firm worked 39.8 hours on this case, at rates ranging from $950 per hour for a partner to $1,200 per hour for a senior partner. (Barenfeld Fees Decl. ¶ 6). This case required Class Counsel to prosecute the lawsuit for over four years, including to defeat a motion to dismiss, conduct investigations, engage in discovery, and file a class certification motion. (Ram Fees Decl. ¶ 2). Regardless of whether $672,054.46 in fees and $14,373.31 in costs is a reasonable figure, and regardless of whether over 900 hours billed in this case is reasonable, because Class Counsel is requesting only $65,000 of its claimed lodestar, the Court finds that it is at least reasonable to award this amount, which would represent a downward adjustment of over 90% from the claimed lodestar of $672,054.46. Given the length of litigation and complexity of this matter, the Court finds the $65,000 requested fee to be reasonable. *Hanlon*, 150 F.3d at 1029.

Once an initial determination as to reasonableness of attorneys' fees is made, courts in this Circuit are encouraged to cross-check their analysis using a second method of calculation after analyzing a fee request under a primary method. *See Martinez*, 2021 WL 9181893, at *7 (citing *In re Bluetooth*, 654 F.3d at 944–45). Other methods that courts use to calculate fees, especially in common fund cases such as this one, is a percentage-of-

recovery method.  *Fischel*, 307 F.3d at 1007.  Under the percentage-of-recovery method, "courts typically use 25% of the fund as a benchmark for a reasonable fee award." *Martinez*, 2021 WL 9181893, at \*7 (citing *In re Bluetooth*, 654 F.3d at 942).  Courts may adjust the percentage of the common fund as appropriate under the circumstances.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002).  If a requested award is an upward departure from the 25% benchmark, even if the defendant agrees to pay it, courts apply the following factors (the "*Vizcaino* factors"): (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *Id.* at 1048–50.  Some courts have found that a "percentage cross-check is of less usefulness" in fee-shifting cases. *See, e.g.*, *Congdon v. Uber Techs., Inc.*, 2019 WL 232922, at \*3 (N.D. Cal. May 31, 2019) (citing 5 Newberg on Class Actions § 15:52 (5th edition).

Here, the $65,000 requested fee is 33.3% of the $195,000 common fund.  (Fees Motion at 14).  The Court finds that, even though this figure is greater than the 25% benchmark set in *Vizcaino*, this figure still represents a reasonable percentage of the recovery.  In particular, a downward adjustment to 25% of the settlement amount of $195,000 results in a fee award of $48,750, which would result in Class Counsel receiving only 7.25% of its claimed lodestar.  Such a percentage recovery would be "too small . . . in light of the hours devoted to the case." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 301, 1311 (9th Cir. 1990).  Further, the slightly larger percentage of the settlement amount is in part due to the limited amount of money available for settlement from Defendants' insurance policy that is wasting away.

Accordingly, the Court finds that Class Counsel's Requested Fee is reasonable.  Fed. R. Civ. P. 23(h).

## V.    CONCLUSION

For the foregoing reasons, the Court:

1.    GRANTS Plaintiffs' Motion for Final Approval of Class Action Settlement;

-24-

2.   CERTIFIES the Settlement Class, as described *supra* Section I.C.1., for settlement purposes only;

3.   APPROVES the Amended Settlement Agreement;

4.   APPOINTS Plaintiff DPYB as Class Representative;

5.   APPOINTS Michael F. Ram and Marie N. Appel of Morgan & Morgan Complex Litigation Group and Gretchen M. Nelson and Gabriel S. Barenfeld of Nelson & Fraenkel LLP as Class Counsel;

6.   APPOINTS CPT Group, Inc., as the Settlement Administrator;

7.   GRANTS a service award of $1,000 to the Class Representative; and

8.   GRANTS the Fees Motion, awarding attorneys' fees and expenses of $65,000 to Class Counsel.

No later than fourteen (14) calendar days from the date of this Order, Plaintiffs' Counsel shall submit to the Court a proposed judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  March 20, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE